BEGIN v MICHIGAN BELL TELEPHONE COMPANY

Docket Nos. 279891 and 284114. Submitted June 9, 2009, at Grand Rapids. Decided June 25, 2009, at 9:05 a.m.

Neil Begin brought an action in the Kent Circuit Court against Michigan Bell Telephone Company and it self-insurance claims manager, Sedgwick Claims Management Services, Inc., seeking payment as an allowable expense under the no-fault automobile insurance act, MCL 500.3107(1)(a), of the price of a van modified for his handicaps. The plaintiff, in a motor vehicle accident during the course of his employment with Michigan Bell, suffered accidental bodily injuries that rendered him a quadriplegic. The parties reached a consent judgment that provided that Michigan Bell pay for the van and the necessary modifications but also provided that the defendants did not waive their right to appeal from the judgment with regard to issues involving *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521 (2005), and *Davis v Citizens Ins Co of America*, 195 Mich App 323 (1992). The court, Dennis B. Leiber, J., entered a judgment consistent with the parties' agreement. Michigan Bell and Sedgwick appealed pursuant to their reserved claim of right to appeal (Docket No. 279891).

Begin filed a separate complaint in the Kent Circuit Court against Michigan Bell four months after the entry of the consent judgment in his earlier action, asserting several theories of liability arising out of Michigan Bell's handling of the plaintiff's claims for workers' compensation and no-fault benefits. One count alleged invasion of privacy-trespass. Three counts based on contract, estoppel, and statutory interpretation theories asserted a right to the payment of attendant care benefits in the manner used before Michigan Bell retained Sedgwick. A final count alleged intentional infliction of emotional distress. Michigan Bell moved for summary disposition, arguing that the claims were barred by the doctrine of res judicata and that the count for intentional infliction of emotional distress failed to state a claim on which relief can be granted. The court, Dennis B. Leiber, J., denied the motion. Michigan Bell appealed by leave granted the denial of its motion (Docket No. 284114). The appeals were consolidated.

The Court of Appeals *held*:

1. Michigan Bell waived its ability to contest both the reasonableness of the charge for the van and the reasonableness of the necessity for the van by agreeing to the entry of the consent judgment. In addition, the defendants did not properly preserve and present the issue for appellate review.

2. *Davis* held that under the facts of that case a van modified for the plaintiff in that case, who was rendered a paraplegic in a motor vehicle accident, was a reasonable and a reasonably necessary allowable expense under MCL 500.3107(1)(a). *Davis* also held that the three factors to establish an allowable expense under the statute are that the charge must be reasonable, the expense must be reasonably necessary, and the expense must be incurred. *Griffith*, which noted that the statute also required that an allowable expense must be for an injured person's care, recovery, or rehabilitation, did not overrule *Davis*, which remains binding precedential authority.

3. A product, service, or accommodation an injured person uses both before and after a motor vehicle accident may be an "allowable expense" no-fault benefit depending on the particular facts and circumstances involved. The fact that the plaintiff used a van before the accident does not prevent a finding that his use of a modified van after his accident was a reasonable charge, and that the van was a reasonably necessary product, service, or accommodation for his care. The trial court did not err by denying the defendants' motion for summary disposition, which was based on the claim that if an injured person uses a product, service, or accommodation both before and after a motor vehicle accident, it cannot meet the causal relationship tests for an "allowable expense" no-fault benefit. The judgment in Docket No. 279891 must be affirmed.

4. The plaintiff did not limit the relevant transaction for purposes of res judicata by allegedly narrowly drafting his first complaint to only address Michigan Bell's denial of his claim for reimbursement for the cost of the van as a no-fault benefit.

5. The plaintiff could have, with reasonable diligence, brought his attendant care claims in his first lawsuit. These claims are barred by res judicata.

6. The plaintiff's claim for intentional infliction of emotional distress could have been raised in his first lawsuit. The claim is barred by res judicata.

7. The plaintiff failed to state a claim of invasion of privacy by intrusion upon seclusion. Michigan Bell did not obtain the plaintiff's personnel and pension information through an objectionable method. Michigan Bell had a right to investigate a party asserting

a liability claim against it, and the plaintiff did not allege that Michigan Bell obtained any secret or private information that the plaintiff had a right to keep private.

8. The plaintiff could have asserted the claim of intentional infliction of emotional distress in the first lawsuit by moving to include that claim in the action when the facts that the plaintiff claims support the claim were revealed during the course of discovery. The trial court erred by not granting Michigan Bell's motion for summary disposition under MCR 2.116 (C)(7) and (8) in Docket No. 284114. The order in that case must be reversed and the case must be remanded to the trial court for entry of an order granting summary disposition in favor of Michigan Bell.

Judgment in Docket No. 279891 affirmed. Order in Docket No. 284114 reversed and case remanded for entry of order of summary disposition for the defendant.

HOEKSTRA, J., concurring, agreed with the resolution of Docket No. 284114 and with the result in Docket No. 279891, but wrote separately to state his disagreement with the majority's conclusion that *Davis* is controlling in this case. The clarification of the construction of MCL 500.3107(1)(a) stated in *Griffith* is applicable to all cases where compensation is sought for allowable expenses, including vans, under MCL 500.3107(1)(a). Under that analysis, the plaintiff was required to establish that the charge for the van was reasonable, and that the van was for his care, recovery, or rehabilitation. *Griffith* did not establish a bright-line rule that would preclude as an allowable expense any motor vehicle similar to one owned by the injured person before the injury. However, an inquiry into the specific facts and circumstances of this case regarding that issue is precluded because of the entry of the consent judgment.

*Brinks & Associates* (by *Sharon R. Brinks* and *Nadine Renee Klein*) for the plaintiff.

*Lacey & Jones* (by *D. Michael McCann, Gerald M. Marcinkoski,* and *Michael T. Reinholm*) for the defendants.

Before: JANSEN, P.J., and HOEKSTRA and MARKEY, JJ.

PER CURIAM. In Docket No. 279891, defendant Michigan Bell Telephone Company (defendant) and its self-

insurance claims manager, Sedgwick Claims Management Services, Inc. (Sedgwick), appeal by a reserved claim of right to appeal a July 19, 2007, consent judgment that, among other provisions, requires defendants to pay $25,059 for a 2005 Pontiac Montana van as an allowable expense under the no-fault act, MCL 500.3107(1)(a). Plaintiff's claim arises out of a 1988 motor vehicle accident that happened while plaintiff worked for defendant. Defendant insures itself for both workers' compensation and no-fault benefits. Plaintiff suffered accidental injuries rendering him a quadriplegic. We affirm.

In Docket No. 284114, defendant appeals by leave granted the trial court's order denying its motion for summary disposition with respect to a complaint plaintiff filed after entry of the consent judgment in Docket No. 279891. The appeals were consolidated. Plaintiff asserts in his second lawsuit several theories of liability arising out of defendant's handling of plaintiff's benefits claims, including intentional infliction of emotional distress, invasion of privacy-trespass, and claims regarding the method of payment for attendant care expenses under theories of breach of contract, promissory estoppel, and statutory construction. Defendant argues that it should be granted summary disposition under MCR 2.116(C)(7) because plaintiff's claims in the second suit could have been brought in the first lawsuit regarding the van, and therefore are barred by the doctrine of res judicata. Defendant also argues that summary disposition of the claim for intentional infliction of emotional distress should be granted under MCR 2.116(C)(8) for failure to state a claim. Because we agree that defendant's arguments have merit, we reverse and remand for the entry of an order granting summary disposition in favor of defendant.

DOCKET NO. 279891

A party that waives an objection to a rule of practice or to evidence, stipulates to facts, or confesses judgment, generally cannot later claim the right to appellate review of those matters. *Westgate v Adams*, 293 Mich 559, 564; 292 NW 491 (1940). But this Court "has previously recognized that an appeal of right is available from a consent judgment in which a party has reserved the right to appeal a trial court ruling." *Travelers Ins v Nouri*, 456 Mich 937 (1998). Nevertheless, unless an issue encompassed within the consent judgment has been specifically preserved for appeal, the general rule is that a party cannot stipulate a matter and then argue on appeal that the resulting action was error. *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 168; 761 NW2d 764 (2008); see also *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001) ("A party cannot stipulate a matter and then argue on appeal that the resultant action was error.").

In this case, on July 6, 2007, the parties placed a settlement on the record providing, among other things, that defendant pay $25,059 for the van plaintiff had purchased. Since plaintiff's accident, defendant had purchased three other vans without any protest. In addition, defendant did not contest paying for modifications to the van to accommodate plaintiff's disabilities as a claim against its workers' compensation liability. Plaintiff's counsel stated on the record that the parties' settlement "does not waive Defendant's right to appeal from the judgment regarding the issues involving *Griffith* [*v State Farm Mut Automobile Ins Co*, 472 Mich 521; 697 NW2d 895 (2005)] and *Davis* [*v Citizens Ins Co of America*, 195 Mich App 323; 489 NW2d 214 (1992)] as set forth in the various motions and cross-motions that have been heard on a number of occasions,

including August the 4th, 2006, and June the 15th, 2007." The consent judgment was entered on July 19, 2007, providing that it "does not waive defendants' right to appeal from the Judgment regarding the issues involving Griffith and Davis as set forth in the various motions and cross-motions considered [on August 4, 2006 and June 15, 2007] . . . ."

The agreement regarding defendants' reserved right to appeal is further delineated by review of the two specified motion hearings. At the hearing on August 4, 2006, the trial court received arguments of counsel on defendants' motion for summary disposition under MCR 2.116(C)(8) and plaintiff's cross-motion for summary disposition under MCR 2.116(C)(10). Defendants argued in support of their motion under MCR 2.116(C)(8) as follows:

> I believe the Supreme Court case of *Griffith* . . . does give the Court guidance on this. The *Davis* case, which is the Court of Appeals case cited by counsel, is really *sua sponte* overruled by *Griffith*. *Griffith* indicates that expenses which are the same for an uninjured person are now [sic, not] allowable under the No-Fault Act.

In ruling on the parties' motions, the trial court reasoned:

> Of this I am certain. The principle enunciated in *Davis*, in my opinion, is still viable and controlling. And for that reason I find *Griffith* distinguishable and inapplicable to this case, and I must respectfully deny the defense motion predicated under [MCR] 2.116(C)(8).
>
> As to the [MCR 2.116](C)(10) motion brought by the plaintiff, again, in attempting to assess the issue presented, I do find this van in its totality represents a necessity because of the particularities of the plaintiff's condition and the necessity of having these accommodations in a vehicle adapted to meet his particular needs.

Despite this legal ruling, the trial court still denied plaintiff's motion for summary disposition because the court was uncertain whether plaintiff's claim exceeded the circuit court's jurisdictional limit of $25,000.

The second pertinent motion hearing was held on June 15, 2007, shortly before the case was scheduled for trial. During that hearing, the trial court addressed defense counsel, who was substituting for defendant's regular attorney because of illness.

> *The Court*: Well, here's [the posture of the case] as I understand it. The plaintiff is a person who requires a van outfitted with certain accommodations, which are not in contest, and the Court ruled that this is a necessary part of his care.

After further colloquy during which defense counsel and the trial court agreed that the $2,600 for necessary accommodations to the van were not at issue because defendant paid for them as part of plaintiff's workers' compensation claim, the trial court continued:

> *The Court*: Right, they have been [paid already]—$2,600 or so—but it's not accommodations in a vacuum. It's accommodations and a new van, because an operable vehicle is part and parcel of his entitlement, and we're sort of at a crossroads here of not making any progress whatsoever.

After further colloquy between the trial court and counsel, the court stated to defense counsel:

> But let me say this as clearly as I hope it can be communicated to Mr. McCann, whom I wish to be restored to health soon from whatever his malady or ailment.
>
> I don't know if it was called upon me to make a decision with regard to this matter, or the basis upon which summary disposition was denied to plaintiff at the time, but it seems to me—very strong evidence here, that a new van, or a relatively new van since the plaintiff has possessed this

fourth van—seems to me that there's really no question that this is an absolute necessity, that the nature of the accommodations, of course, are important, but those accommodations would do nothing for the plaintiff unless he has a reliable vehicle to which they were attached, and reliable is critical because of the plaintiff's special needs, who depends on the van more than for transportation, but also to assist him in the manners described in the brief. And this is more than a matter in which an able-bodied person would regard a motor vehicle; this is a vehicle for which the plaintiff is solely dependent beyond transportation, but to attend to his daily living.

So the question is how soon will the defense recognize the obvious, and maybe it will take a trial for that purpose. But of course, with a trial, with which comes the potential of an uncertain result . . . .

The trial court went on to deny the parties' pending motions and set a firm trial date of July 23, 2007. But, as already noted, the parties placed their settlement on the record on July 6, 2007, providing, among other things, that defendant pay $25,059 for plaintiff's van. The consent judgment was entered July 19, 2007, and reserved to defendants the right to appeal the *Griffith* and *Davis* issues argued at the two specified motion hearings. In addition, the consent judgment also relates that defendants previously had waived affirmative defenses regarding the statute of limitations, the failure to mitigate damages, and "their Davis defense." The meaning of the last defense is unclear. Plaintiff asserts in his brief that "Davis defense" refers to the reasonableness of an allowable expense under MCL 500.3107(1)(a), in this case, the van. Whether or not this is correct, we conclude that defendant has waived its ability to contest both the reasonableness of the charge and the reasonableness of the necessity for the van.

Defendants argue on appeal that plaintiff "has presented no evidence that the replacement van itself, without modifications, was reasonable and necessary within the meaning of" MCL 500.3105(1) and MCL 500.3107(1)(a). But defendant did not argue in the trial court that plaintiff's claim failed as a matter of law for these reasons, i.e., that the undisputed facts entitled defendants to summary disposition under MCR 2.116(C)(10). Rather, defendants argued entitlement to judgment as a matter of law under MCR 2.116(C)(8) on the basis that our Supreme Court's decision in *Griffith* overruled this Court's decision in *Davis*, which held that a van modified for the plaintiff who was rendered a paraplegic in a motor vehicle accident was, on the facts of that case, a reasonable and a reasonably necessary allowable expense under MCL 500.3107(1)(a). At the motion hearings, the trial court ruled that plaintiff had presented strong evidence to sustain his claim that the van was a "reasonable charge[] incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." *Id.* But the trial court denied plaintiff's MCR 2.116(C)(10) motion and scheduled a firm trial date. Had defendants wished to contest the factual support for the finding that the van was a reasonable charge and reasonably necessary for plaintiff's care under MCL 500.3107(1)(a), they should have exercised their right to a trial on those issues and developed a record in that regard. Instead, defendants agreed to the entry of a consent judgment. Although defendants have reserved their right to appeal the trial court's denial of their motion for summary disposition under MCR 2.116(C)(8) with regard to our Supreme Court's decision in *Griffith,* we conclude that this record reflects that defendants have waived appellate review of the

issues of reasonableness under MCL 500.3107(1)(a). *Westgate, supra* at 564; *Bonkowski, supra* at 168; *Chapdelaine, supra* at 177.

Additionally, although defendants' brief on appeal refers to parts of plaintiff's deposition and argues against plaintiff's reasons for asserting that the van is reasonably necessary for his care, defendants' presentation is totally inadequate to address those factual issues that were never formally decided by the factfinder below. A party may not leave it to this Court to search for the factual basis to sustain or reject its position, but must support its position with specific references to the record. MCR 7.212(C)(7); *Derderian v Genesys Health Care Systems*, 263 Mich App 364, 388; 689 NW2d 145 (2004). An appellant's failure to properly address the merits of an assertion of error constitutes abandonment of the issue. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003); *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Consequently, even if defendants did not formally waive contesting the evidentiary support for plaintiff's claim that the van was a reasonable charge and reasonably necessary for his care, they did so by agreeing to the consent judgment, or by failing to properly preserve and present the issue for appellate review.

Next, we consider defendants' claimed entitlement to judgment as matter of law under *Griffith* and their reasoning that because plaintiff used a van for transportation before his injuries, plaintiff's motor vehicle accident injuries did not create his need for a van. We disagree. We do not read *Griffith* as establishing the bright-line rule defendants espouse; rather, entitlement to no-fault benefits is dependent on the facts and circumstances of each case.

We review de novo whether the trial court erred by denying defendants' motion for summary disposition under MCR 2.116(C)(8). *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004). Such a motion tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted. *Id.* We must accept all well-pleaded factual allegations as true, construing them in a light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(8) may be granted only if no factual development could possibly justify recovery. *Corley, supra* at 277.

In *Davis*, this Court reviewed the trial court's determination that the purchase price of a modified van was a reasonable and necessary expense under MCL 500.3107(a) for the plaintiff, a wheelchair-bound paraplegic. *Davis, supra* at 324-325. To do so, the *Davis* Court applied a three-part test originating from the concurring in part and dissenting in part opinion of Justice BOYLE in *Manley v Detroit Automobile Inter-Ins Exch*, 425 Mich 140, 169; 388 NW2d 216 (1986). The three factors to establish an "allowable expense" under § 3107(1)(a), according to the *Davis* Court, are: "(1) the charge must be reasonable; (2) the expense must be reasonably necessary; and (3) the expense must be incurred." *Davis, supra* at 326. In the case before it, the Court first ruled that the first and third factors were satisfied. The Court then held that the specific expense requested was reasonably necessary, opining:

> We also find that the van was reasonably necessary. *Transportation is as necessary for an uninjured person as for an injured person.* However, the modified van *is necessary in this case* given the limited availability of alternative means of transportation. The ambulance service is limited

to Branch County, traveling outside the county two or
three times a week. Although this service is available
twenty-four hours a day, seven days a week, advance notice
is preferred for clients who, like plaintiff, reside more than
five miles from town. Moreover, because the ambulance
service is the only one in the county, transportation could
be delayed or unavailable because of medical emergencies.
The local transit authority provides door-to-door service to
clients who make advance reservations, but it is unavail-
able during evenings. The van allows plaintiff to travel
outside the county for medical purposes and vacations. In
addition, the van was reasonably necessary according to
plaintiff's treating physician. He testified that when he
discharged plaintiff, one of the requirements was that
plaintiff use a van for her transportation, allowing her the
independence to go to work. *Under these circumstances, we
find that the modified van is an allowable expense. [Id.* at
327-328 (emphasis added).]

In *Griffith*, our Supreme Court held that food provided
in a noninstitutional setting to a severely injured motor
vehicle accident victim is not an "allowable expense"
under the no-fault act because it "is neither 'for accidental
bodily injury' under MCL 500.3105(1) nor 'for an injured
person's care, recovery, or rehabilitation' under MCL
500.3107(1)(a) . . . ." *Griffith, supra* at 524. The Court
opined that MCL 500.3105(1) and MCL 500.3107(1)(a)
"impose two separate and distinct requirements for 'care,
recovery, or rehabilitation' expenses to be compensable
under the no-fault act." *Griffith, supra* at 530. The first
statutory provision requires that allowable expenses be
" '*for accidental bodily injury* arising out of the owner-
ship, operation, maintenance or use of a motor ve-
hicle . . . .' " *Id.*, quoting MCL 500.3105(1) (emphasis in
original). The second statutory provision requires that
allowable expenses be " 'reasonably necessary . . . for an
injured person's care, recovery, or rehabilitation.' " *Grif-
fith, supra* at 530, quoting MCL 500.3107(1)(a).

The *Griffith* Court further parsed MCL 500.3105(1) as requiring two different causal relationships: (a) the claimed *benefits* must be "causally connected to the accidental bodily injury arising out of an automobile accident" and (b) no-fault benefits are payable "for accidental bodily injury only if those injuries 'aris[e] out of' or are caused by 'the ownership, operation, maintenance or use of a motor vehicle . . . .' " *Griffith, supra* at 531, quoting MCL 500.3105(1). The Court held that while the plaintiff satisfied the second prong of the statute, the plaintiff had not satisfied the first causal element because the plaintiff did not claim that his "diet is different from that of an uninjured person, that his food expenses are part of his treatment plan, or that these costs are related in any way to his injuries." *Griffith, supra* at 531. We agree with the trial court that the present case is factually distinguishable from *Griffith* because here plaintiff claimed, and presented evidence, that his transportation needs were different from those of an uninjured person and that the modified van for which he sought reimbursement was related to care necessitated by his injuries arising out of the operation or use of a motor vehicle.

Certainly, the *Griffith* Court clarified that the truncated test for allowable expenses under MCL 500.3107(1)(a), first iterated by Justice BOYLE, and reiterated by this Court in *Davis, supra* at 326, did not sufficiently state all that statute's requirements. The *Griffith* Court observed that Justice BOYLE's statement that MCL 500.3107(1)(a) imposed only three requirements: " '1) the charge must be reasonable, 2) the expense must be reasonably necessary, and 3) the expense must be incurred,' " was incomplete. *Griffith, supra* at 532 n 8, quoting *Manley, supra* at 169 (BOYLE, J., concurring in part and dissenting in part). The *Griffith* Court noted that the statute also required "that

an 'allowable expense' must be 'for' one of the following: (1) an injured person's care, (2) his recovery, or (3) his rehabilitation." *Griffith, supra* at 532 n 8. To this extent, then, our Supreme Court without mentioning this Court's decision in *Davis,* clarified judicial construction of MCL 500.3107(1)(a), on which the *Davis* Court relied.

Although the *Griffith* Court clarified judicial construction of both MCL 500.3105(1) and MCL 500.3107(1)(a) to determine whether claimed no-fault benefits are "allowable expenses," the Court did not specifically overrule this Court's decision in *Davis.* Indeed, *Griffith* only specifically overruled *Reed v Citizens Ins Co of America,* 198 Mich App 443; 499 NW2d 22 (1993), which had held that room and board may be "allowable expenses" because there was no principled distinction between such necessities furnished in an institutional setting and the same items furnished to severely injured persons in their home. *Griffith, supra* at 529, 540. Because the *Griffith* Court did not overrule *Davis,* and because *Davis* was issued on or after November 1, 1990, the *Davis* decision is binding precedential authority until it is "reversed or modified by the Supreme Court, or by a special panel" of this Court. MCR 7.215(J)(1).

Moreover, we reject defendants' bright-line rule that if an injured person uses a product, service, or accommodation both before and after the person's motor vehicle accident, the person cannot for that reason meet the statutory causal relationship tests clarified in *Griffith* for an "allowable expense" no-fault benefit. Rather, the *Griffith* Court held that a product, service, or accommodation an injured person uses both before and after a motor vehicle accident might be an "allowable expense" no-fault benefit depending on the par-

ticular facts and circumstances involved. Just as the Court was careful to parse the words of the statute in the context of their use, *Griffith*, *supra* at 533-535, so too the context in which a product, service, or accommodation is used is key when considering whether it is an allowable expense under the no-fault act. Thus, in *Griffith*, the injured person's need for food at his own home was not an allowable expense because it was neither causally related to the accident under MCL 500.3105(1) nor necessary for the injured person's care, recovery, or rehabilitation under MCL 500.3107(1)(a). Nonetheless, the Court observed that food furnished to an injured person in an institutional setting could meet the statutory criteria of an allowable no-fault expense. The Court explained:

> Food costs in an institutional setting are "benefits for accidental bodily injury" and are "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." That is, it is "reasonably necessary" for an insured to consume hospital food during in-patient treatment given the limited dining options available. Although an injured person would need to consume food regardless of his injuries, he would not need to eat *that particular food* or bear the cost associated with it. Thus, hospital food is analogous to a type of special diet or select diet necessary for an injured person's recovery. Because an insured in an institutional setting is required to eat "hospital food," such food costs are necessary for an insured's "care, recovery, or rehabilitation" while in such a setting. [*Griffith*, *supra* at 537 (emphasis in original).]

The *Griffith* Court also observed that "[f]ood expenses in an institutional setting are 'benefits for accidental bodily injury,' and are 'reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation,' given the limited dining options available in hospitals." *Griffith*, *supra* at

538 n 14. We find the *Griffith* Court's reasoning regarding institutional food similar to this Court's reasoning in *Davis, supra* at 327-328.

A further example cited by the *Griffith* Court illustrates the fact that our Supreme Court did not adopt the bright-line rule defendants urge. In explaining what "allowable expenses" might come within the term "care" as used in MCL 500.3107(1)(a), the Court used the hypothetical example of a person whose leg was injured or amputated in a motor vehicle accident. The Court opined that "the cost of such items as a prosthetic leg or *special shoes* would be recoverable under the term 'care,' even though the person will never recover or be rehabilitated from the injuries, because the cost associated with such products or accommodations stems from the injury." *Griffith, supra* at 535 n 12 (emphasis added). Thus, in the Court's hypothetical example, the mere fact that the injured person almost certainly used shoes before the accident would not preclude a finding that "special shoes" would be necessary for the injured person's care and thus would be an "allowable expense" under MCL 500.3107(1)(a).

We also note that the *Griffith* Court, when discussing the cost of food provided to an injured person in an institutional setting, did not suggest that only the marginal increase in the cost of such food served in an institutional setting would be an allowable expense. Nor did the Court suggest that only the marginal cost of modifying regular shoes would be a recoverable "allowable expense" under MCL 500.3107(1)(a). Rather, in each example, the product, service, or accommodation used by the injured person before the accident is so blended with another product, service, or accommodation that the whole cost is an allowable expense if it satisfies the statutory criteria of being sufficiently re-

lated to injuries sustained in a motor vehicle accident and if it is a reasonable charge and reasonably necessary for the injured person's care, recovery, or rehabilitation under MCL 500.3107(1)(a). The latter inquiry, of course, is factual and dependent on the circumstances of each case. See *Rose v State Farm Mut Automobile Ins Co*, 274 Mich App 291, 296; 732 NW2d 160 (2007) ("whether PIP [personal protection insurance] expenses are reasonable and necessary is generally considered a question of fact for the jury").

Here, plaintiff alleged and presented evidence in support of his claim that a modified van was "causally connected to the accidental bodily injury arising out of an automobile accident." *Griffith, supra* at 531. There is no dispute that plaintiff's injuries arose out of an accident that occurred while he was using a motor vehicle. *Id.*; MCL 500.3105(1). Furthermore, plaintiff alleged and presented evidence in support of his claim that a modified van was a reasonable charge and was a reasonably necessary product, service, or accommodation for his care. *Griffith, supra* at 532; MCL 500.3107(1)(a). Although plaintiff's complaint is sparse, accepting all well-pleaded factual allegations as true and construing them in a light most favorable to plaintiff, it cannot be said that plaintiff's claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Corley, supra* at 277; *Maiden, supra* at 119. Consequently, the trial court did not err by denying defendants' motion for summary disposition under MCR 2.116(C)(8).

DOCKET NO. 284114

Defendant appeals by leave granted the trial court's order denying its motion for summary disposition under MCR 2.116(C)(7) and (8). Four months after the

entry of the consent judgment in Docket No. 279891, plaintiff filed a complaint that asserts several theories of liability arising out of defendant's handling of plaintiff's claims for workers' compensation and no-fault benefits. Plaintiff alleged a count of invasion of privacy-trespass; three counts (contract, estoppel, and statutory interpretation) asserting a right to payment of attendant care benefits in the manner utilized before defendant retained Sedgwick to manage its self-insurance claims, and a count of intentional infliction of emotional distress. Defendant argues that plaintiff's claims in the second suit are barred by the doctrine of res judicata. Defendant also argues that plaintiff's claim for intentional infliction of emotional distress should have been dismissed for failure to state a claim. We agree and therefore reverse.

We review de novo whether the doctrine of res judicata bars a subsequent action. *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). We also review de novo a trial court's ruling on a motion for summary disposition. *Id.* A motion for summary disposition under MCR 2.116(C)(7) asserts that a claim is legally barred. The motion may, but need not, be supported or opposed by affidavits, depositions, admissions, or other documentary evidence. *Maiden, supra* at 119. The allegations of the complaint are accepted as true unless contradicted by documentary evidence. *Id.* The motion is properly granted when the undisputed facts establish that the moving party is entitled to immunity granted by law. *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 26; 703 NW2d 822 (2005). A motion brought under MCR 2.116(C)(8) is based on the pleadings alone and must be granted where no factual development could justify the asserted claim for relief. *Corley, supra* at 277.

The doctrine of res judicata will bar a subsequent action between the same parties when the facts or evidence essential to the action are identical to those that were essential to a prior action. *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001). "The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair, supra* at 121. For res judicata to apply, the prior action must also have resulted in a final decision. *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006). Res judicata applies to both consent judgments and judgments entered after a contested trial. *Schwartz v City of Flint*, 187 Mich App 191, 194; 466 NW2d 357 (1991). The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation. *Richards, supra* at 530; *Jones v State Farm Mut Automobile Ins Co*, 202 Mich App 393, 401; 509 NW2d 829 (1993).

The parties do not seriously dispute that the consent judgment entered in Docket No. 279891 was decided on the merits, was a final judgment, and involved the same parties or their privies. Plaintiff weakly asserts that identity of the parties is lacking because Sedgwick is not a party to the second suit. This argument is without merit because plaintiff and defendant are parties to both the prior action and this one. And, there is no dispute that Sedgwick is defendant's agent with respect to plaintiff's claims for workers' compensation and no-fault benefits. A privy of a party includes a person so identified in interest with another that he represents the same legal right, including, as in this case, a principal to an agent, or a master to a servant. *Adair,*

*supra* at 122; *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 12-13; 672 NW2d 351 (2003). The only real issue in this case is whether plaintiff's claims were, or could have been, resolved in the first lawsuit. *Adair*, *supra* at 121.

Michigan broadly applies the doctrine of res judicata to advance its purposes. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999). "As a general rule, res judicata will apply to bar a subsequent relitigation based upon the same transaction or events . . . ." *Id.* Thus, under Michigan's broad approach to res judicata, the doctrine "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, *supra* at 121. There are two alternative tests for determining when res judicata will bar a claim in a second lawsuit because the claim could have, with the exercise of reasonable diligence, been brought in the first action: the "same transaction" test and the "same evidence" test. *Id.* at 124. The "same evidence" test looks to "whether the same facts or evidence are essential to the maintenance of the two actions." *Jones*, *supra* at 401. As stated in *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999): "Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical."

Michigan also applies the more inclusive "same transaction" test as an alternative method to determine whether res judicata will bar a subsequent claim. In *Adair*, *supra* at 124, the Court clarified the differences between the two tests by quoting at length from *River Park, Inc v Highland Park*, 184 Ill 2d 290, 307-309; 703 NE2d 883 (1998) (citations omitted):

> "Under the 'same evidence' test, a second suit is barred
> 'if the evidence needed to sustain the second suit would

have sustained the first, or if the same facts were essential to maintain both actions.' The 'transactional' test provides that 'the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief.'

\* \* \*

"Under the same evidence test the definition of what constitutes a cause of action is narrower than under the transactional test. As explained in the Restatement (Second) of Judgments, the same evidence test is tied to the theories of relief asserted by a plaintiff, the result of which is that two claims may be part of the same transaction, yet be considered separate causes of action because the evidence needed to support the theories on which they are based differs. By contrast, the transactional approach is more pragmatic. Under this approach, a claim is viewed in 'factual terms' and considered 'coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; \* \* \* and regardless of the variations in the evidence needed to support the theories or rights.' "

Thus, under Michigan's broad application of res judicata applying the "same transaction" test, whether evidence necessary to support a first lawsuit differs somewhat from that necessary for subsequent claims will not be dispositive. *Adair, supra* at 124-125. Instead, " '[w]hether a factual grouping constitutes a "transaction" for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation,* [and] whether they form a convenient trial unit . . . .' " *Id.* at 125, quoting 46 Am Jur 2d, Judgments, § 533, p 801 (emphasis in *Adair*).

In light of the broad application of the doctrine of res judicata and in furtherance of its purposes, we find

meritorious defendant's argument that its adjustment and payment of no-fault benefits arising out of plaintiff's 1988 motor vehicle accident is the pertinent "transaction" at issue in applying the doctrine of res judicata. Further, although defendant does not specifically argue this point, to the extent relevant to plaintiff's no-fault claims, we include in this pragmatic group of operative facts, plaintiff's workers' compensation claims arising out of the same motor vehicle accident.[1] For example, the parties agree that accommodations to plaintiff's van were paid under workers' compensation and both parties argue that attendant care benefits are payable under both workers' compensation and no-fault.

In applying the "same transaction" test for res judicata to plaintiff's claims in the second lawsuit, we first reject plaintiff's argument that he limited the "transaction" for purposes of res judicata by narrowly drafting his first complaint to only address defendant's denial of his claim for reimbursement of the cost of the van as a no-fault benefit. This argument flies in the face of the broad application of res judicata that bars "claims arising out of the same transaction that plaintiff could have brought but did not, as well as those questions that were actually litigated." *Jones, supra* at 401. "A comparison of the grounds asserted for relief is not a proper test." *Id.*

Next, we agree with defendant that plaintiff could have, with reasonable diligence, brought his attendant

---

[1] In fact, defendant argues that any dispute the parties may have regarding benefits under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, comes within the exclusive jurisdiction of the Workers' Compensation Agency, citing MCL 418.131 (exclusive remedy), and *Houghtaling v Chapman*, 119 Mich App 828, 831; 327 NW2d 375 (1982). See also *Harris v Vernier*, 242 Mich App 306, 312; 617 NW2d 764 (2000) ("MCL 418.841(1) . . . confers exclusive jurisdiction of claims under the WDCA on the Bureau of Worker's Compensation.").

care claims in his first lawsuit, under theories of contract, estoppel, or statutory construction. Each of these claims relates not to defendant's refusal to pay attendant care benefits, but to the manner in which defendant paid them. Specifically, at some point defendant stopped paying such claims in advance to an account controlled by plaintiff and instead paid individual care providers directly, using their social security numbers. Plaintiff argues that these claims were not "ripe" at the time he filed his first lawsuit on December 12, 2005, and did not become "ripe" until February 2007, when Willie Dillard, apparently a Sedgwick adjuster, began paying attendant care benefits under both workers' compensation and no-fault. Defendant asserts that neither the law nor the facts support plaintiff's argument. We agree.

The December 15, 1989, letter on which plaintiff bases his contract claim does not state whether attendant care benefits are payable as workers' compensation benefits, as no-fault benefits, or a combination of both. Plaintiff also attached to his complaint a letter dated April 14, 2005, from Sedgwick claims examiner Kimberly White, which advised plaintiff that the method of paying attendant care benefits would change on May 1, 2005. The letter also requested the social security number of plaintiff's caregiver spouse. Further, in the letter White denied plaintiff's claim for reimbursement for the van and request to increase the amount paid to plaintiff's spouse for attendant care. In the letter White cites both the workers' compensation act and the no-fault act as the basis for denying both requests. Plaintiff's counsel at that time wrote White a letter dated May 10, 2005, requesting reconsideration of the determination regarding the method of paying no-fault attendant care benefits, specifically citing MCL 500.3112 and no-fault caselaw, as reasons for doing so.

Counsel's argument in that letter is incorporated into plaintiff's statutory construction claim in the present case. Finally, defendant notes that because plaintiff's attendant care needs exceeded that which was payable as a workers' compensation benefit, citing MCL 418.315(1), defendant had always paid attendant care benefits under both workers' compensation and no-fault in excess of that paid under workers' compensation.[2] Consequently, we conclude that the record establishes that plaintiff, in the exercise of reasonable diligence, could have raised his attendant care claims in the first lawsuit but did not do so. Consequently, these claims are barred by res judicata. *Adair, supra* at 121.

Next, a perusal of plaintiff's claims regarding intentional infliction of emotional distress convinces us that they all involve the interaction between plaintiff and defendant, or defendant's agents, regarding the payment and adjustment of workers' compensation and no-fault benefits arising out of the 1988 motor vehicle accident plaintiff had while employed by defendant. As discussed already, we find that plaintiff's tort claim is related in time, space, origin, and motivation, and would form a convenient trial unit, with plaintiff's claims for no-fault benefits arising from his injuries in the motor vehicle accident. In fact, the factual basis of plaintiff's claim that defendant intentionally inflicted emotional distress is inextricably interwoven with his claims for benefits and defendant's response to the claims. As such, this claim is part of a pragmatic factual

---

[2] Plaintiff's complaint alleges that he needs attendant care 16 hours a day for most days and 24 hours a day for 48 days a year, or a minimum of 112 hours a week for attendant care. The workers' compensation act, MCL 418.315(1), provides, in part, "Attendant or nursing care shall not be ordered in excess of 56 hours per week if the care is to be provided by the employee's spouse, brother, sister, child, parent, or any combination of these persons."

grouping that constitutes a "transaction" for purposes of res judicata. *Id.* at 125. Because plaintiff, had he exercised reasonable diligence, could have raised this claim in his first lawsuit, it is now barred by res judicata. *Id.* at 121. Consequently, we do not reach defendant's argument under MCR 2.116(C)(8).

Last, we address the parties' arguments regarding plaintiff's claim for invasion of privacy-trespass. This tort can take different forms with different elements: intrusion, disclosure, false light, and appropriation. *Earp v Detroit*, 16 Mich App 271, 276; 167 NW2d 841 (1969). More specifically, these four tort theories are: "(1) the intrusion upon another's seclusion or solitude, or into another's private affairs; (2) a public disclosure of private facts about the individual; (3) publicity that places someone in a false light in the public eye; and (4) the appropriation of another's likeness for the defendant's advantage." *Lewis v LeGrow*, 258 Mich App 175, 193; 670 NW2d 675 (2003). A careful reading of plaintiff's complaint discloses that its allegations relate only to the first theory. The elements of this tort were stated by this Court in *Doe v Mills*, 212 Mich App 73, 88; 536 NW2d 824 (1995) (citations omitted):

> An action for intrusion upon seclusion focuses on the manner in which information is obtained, not its publication; it is considered analogous to a trespass. There are three necessary elements to establish a prima facie case of intrusion upon seclusion: (1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man.

Plaintiff alleges in support of his invasion of privacy claim that as plaintiff's former employer, defendant had access to his personnel records and pension information and shared this information with its agent, Sedgwick.

Also, plaintiff alleges that defendant hired private investigators to conduct surveillance of him. Plaintiff also includes as a basis for this tort claim allegations that defendant or Sedgwick investigated his financial situation and required him to submit to an independent medical examination. Defendant argues that these allegations are insufficient to state a claim for relief under the theory of invasion of privacy by intrusion into seclusion. Defendant also argues that even if plaintiff has stated a claim for invasion of privacy, he should have added this claim to the first lawsuit. Plaintiff counters that he did not learn of the surveillance until the discovery process in the first lawsuit, which was after the time to amend his complaint as a matter of right had expired. Because defendant raised these arguments in its application for leave to appeal and the parties have appropriately briefed them, they are properly before the Court. MCR 7.205(D)(4).

We agree with defendant that plaintiff has failed to state a claim of invasion of privacy by intrusion upon seclusion. To the extent that personnel and pension information regarding plaintiff in defendant's possession concerns a secret and private subject matter, defendant obtained the information not by some method objectionable to a reasonable man, but because of its relation to plaintiff as his former employer. Thus, this allegation fails to state a claim on which relief may be granted for invasion of privacy by intrusion into seclusion.[3] *Doe*, *supra* at 88.

With respect to other matters plaintiff alleges as supporting his claim of invasion of privacy, defendant correctly asserts that it has a right to investigate a party

---

[3] Defendant's disclosing information to its agent, Sedgwick, would also not satisfy the disclosure theory of invasion of privacy because there is no *public* disclosure of private information.

asserting a liability claim against it. In *Saldana v Kelsey-Hayes Co*, 178 Mich App 230, 232; 443 NW2d 382 (1989), the defendant employer, suspecting that the plaintiff employee "was malingering, engaged a private investigating firm to investigate plaintiff and to attempt to determine the extent of plaintiff's injuries." The plaintiff filed suit alleging that the defendant had invaded the plaintiff's privacy by intruding into the plaintiff's secluded and private affairs. This Court concluded that the plaintiff's claims failed because the plaintiff did not allege facts that showed that the intrusions were into matters the plaintiff had a right to keep private. *Id.* at 234-235. Further, the Court concluded that the defendant had the "right to investigate matters that are potential sources of legal liability." *Id.* at 235. Moreover, in the present case, assuming that defendant or its agents employed investigative methods that might be determined to be objectionable to a reasonable man, plaintiff fails to allege that defendant thereby obtained any secret or private information that plaintiff had a right to keep private.

In addition, for much the same reason regarding his claim of intentional infliction of emotional distress, we conclude that plaintiff could have asserted, but did not, his claim for invasion of privacy in his first lawsuit. That plaintiff did not learn all the facts that he claims support this tort claim until during the course of discovery in the first lawsuit does not preclude the application of res judicata. See *Dubuc v Green Oak Twp*, 117 F Supp 2d 610, 625 (ED Mich, 2000), aff'd 312 F3d 736 (CA 6, 2002) ("When, in the course of a law suit, the plaintiff becomes aware of a new cause of action against the same defendant, the plaintiff should move to include the new claim or risk having the doctrine of claim preclusion [res judicata] apply to the omitted claim.").

For all the foregoing reasons, we conclude that the trial court erred by not granting defendant's motion for summary disposition under MCR 2.116(C)(7) and (8).

CONCLUSION

We affirm in Docket No. 279891. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.

We reverse in Docket No. 284114 and remand for entry of an order granting defendant summary disposition. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.

HOEKSTRA, J. (*concurring*). I agree with and join with the majority in its resolution of Docket No. 284114.

In Docket No. 279891 I concur in the result, but write separately to express my disagreement with the majority's conclusion that *Davis v Citizens Ins Co of America*, 195 Mich App 323; 489 NW2d 214 (1992), is controlling. The majority aptly noted that in *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521; 697 NW2d 895 (2005), "our Supreme Court without mentioning this Court's decision in *Davis*, clarified judicial construction of MCL 500.3107(1)(a), on which the *Davis* Court relied." *Ante* at 594. In my opinion, the clarification stated in *Griffith* is applicable to all cases where compensation is sought for allowable expenses, including vans, under MCL 500.3107(1)(a). Thus, to receive compensation for his modified van, plaintiff was required to establish that the charge was reasonable, that the expense was reasonably necessary, that the expense was incurred, and that the van was "for" his care, recovery, or rehabilitation. *Griffith, supra* at 532, 532 n 8.

Nonetheless, I join with the majority in rejecting defendants' claim that *Griffith* advocates a bright-line rule that precludes as an allowable expense any motor vehicle similar to one owned by the injured person before the injury. As stated by the majority, an analysis of a case's specific facts and circumstances is required. However, because of the entry of the parties' consent judgment, an inquiry into the present case's facts and circumstances is foreclosed. Consequently, I join in the result of affirming the trial court's order denying defendants' motion for summary disposition.