# STATE OF MICHIGAN

# COURT OF APPEALS

---

GREGORY REED AND ASSOCIATES, P.C.,

      Plaintiff-Appellant,

v

ELAINE STEELE, Personal Representative of the
Estate of ROSA LOUISE PARKS, Deceased,

      Defendant-Appellee.

UNPUBLISHED
March 20, 2018

No. 335939
Wayne Probate Court
LC No. 2016-815274-CZ

---

Before: K. F. KELLY, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals by right an order dismissing its claim against defendant. The probate court found that plaintiff's 2016 complaint to enforce an attorney charging lien was barred by its prior claim for breach of contract in 2006. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Many of the facts are not in dispute and are best summarized in the probate court's September 20, 2016 order granting defendant summary disposition:

> In 1999, the decedent, Rosa Louise Parks, purportedly requested plaintiff, Gregory J. Reed and Associates, to prepare a retainer agreement and represent her in a federal lawsuit against the record companies and the rap group "OutKast" to protect her name and legacy. Plaintiff hired other attorneys and law firms, the identities of whom are not germane to this proceeding, to assist with the suit. Decedent entered into a contingency fee agreement and agreed in writing to pay 33 1/3% of any settlement obtained in the case. During the course of the federal litigation (case number 99-cv-76405), the federal district court appointed a Guardian ad Litem (GAL) to represent decedent's interests due to her health condition.
>
> After six and a half years of contentious litigation that made it all the way to the United States Supreme Court, the case ultimately settled in April of 2005. After the settlement, fees were apportioned and allocated. As part of this apportionment of fees, the attorney for the GAL only approved a portion of the attorney fees and expenses requested. He allowed a limited number of expenses,

-1-

including payment to the GAL. The allocation of attorney fees and costs was questioned in the federal court. On August 10, 2005, the court addressed the fees issue and entered an order adopting the GAL's attorney's allocation of attorney fees and costs. The court also denied a motion for reconsideration of the allocation in September of 2005. Plaintiff appealed the federal court's decision to the United States Court of Appeals for the Sixth Circuit. Decedent passed away in October 2005.

After decedent's death, plaintiff and his legal team presented a claim to the personal representatives of the decedent's estate pursuant to MCL 700.7806, seeking enforcement of the retainer agreement and requesting a total of $236,818 in attorney's fees generated by the federal lawsuit. The claim was disallowed by the estate and a notice of disallowance was sent to plaintiff and the attorneys on June 19, 2006. Subsequently, on August 23, 2006, plaintiff and the attorneys filed a civil action or complaint in this court, case number 2006-708950-CZ, seeking unpaid attorney fees from the decedent's GAL and the personal representatives of the decedent's estate.

On February 7, 2007, this court, on its own motion, granted summary disposition pursuant to MCR 2.116(C)(7), (8), and (10) in favor of the personal representatives of the estate and dismissed the action. The court found that there was no legal or factual basis to consider the request for relief filed by plaintiff and the others. Specifically, the court concluded that "pursuant to the clear language of MCL 700.3806(1), the complaint should be dismissed as a matter of law as untimely and beyond the scope of the period allowed by statute." *Reed v Shakoor*, unpublished opinion of the Wayne County Probate Court, issued February 7, 2007 (Docket No. 2006-708950-CZ).

On July 11, 2007, the United States Court of Appeals for the Sixth Circuit issued an opinion, under seal, granting plaintiff costs in the amount of $125,000. The Sixth Circuit also found that plaintiff's appellate fees were not encompassed within the contingency fee agreement entered into by decedent and plaintiff. The court expressed no opinion as to whether the appellate fees are owed, by whom they are owed, or; if owed, the amount. On August 30, 2007, on remand, the federal district court entered an order distributing the attorney fees according to the Sixth Circuit's mandate.

On December 17, 2015, plaintiff submitted a claim to the defendant in the amount of $192,000, which included $125,000 in litigation costs as awarded by the federal district court pursuant to the Sixth Circuit Court of Appeals opinion and paragraph 6 of the retainer agreement and $67,000 in appellate attorney fees. On December 22, 2015, defendant disallowed the claim.

On February 23, 2016, plaintiff filed a "Complaint To Enforce Attorney's Charging Lien" against defendant. Defendant filed a motion for summary disposition, arguing, *inter alia*, that summary disposition was appropriate under MCR 2.116(C)(7) because res judicata barred plaintiff's duplicative claim. Defendant noted that plaintiff's new complaint was an exact

duplicate of plaintiff's 2006 action, which was titled "Complaint for Unpaid Attorney's Fees and Costs By Guardian Ad Litem and From Decedent's Estate Brought Pursuant to MCL § 700.3806 After Receipt of a Notice of Disallowance." Although the 2006 action was based on breach of contract and the 2016 action was founded on an attorney's lien, defendant maintained that it was a distinction without a difference. Both the 2006 action and the 2016 action requested the same relief for the same reasons.

The probate court agreed and concluded:

> Applying the transactional test here, this court finds that plaintiff's claims in the instant case arose out of the same transaction as the claims in the 2006 action in *Reed*. A single group of operative facts gives rise to plaintiff's assertion of relief in both cases. Both actions originate from attorney fees and costs that were incurred in representing the decedent in the federal lawsuit against the rap group OutKast and from the contingency fee agreement signed by the decedent in 1999. In the 2006 complaint, plaintiff requested $192,000 in unpaid attorney fees for services rendered in the OutKast lawsuit. Significantly, plaintiff alleged in the complaint that decedent entered into a binding retainer agreement in 1999 and agreed to pay him 33 1/3% of any settlement obtained. For reasons unknown, plaintiff did not also pursue the fees and costs on a theory of an attorney's charging lien, despite the allegation being based on the same facts as the claim theory. He also did not appeal the decision in *Reed*. Thus, plaintiff's claim in the instant case is merely an alternate theory for recovery in a dispute over entitlement to attorney fees and costs, which was clearly at issue in the first action.

Plaintiff moved for reconsideration. In particular, plaintiff argued that res judicata did not apply to its 2016 compliant to enforce a charging lien because the complaint was based on the 2007 federal court orders directing distribution of attorney fees and costs and was, therefore, not part of the time component for the 2006 transaction. Plaintiff maintained that the federal court's distribution order did not become a "fact" until the Sixth Circuit's order and could not be related in time to the 2006 order. Plaintiff argued that the probate court conflated a future fact with a past fact under the transaction test.

The probate court disagreed, noting:

> Plaintiff attempts to bypass res judicata by claiming that the current complaint is based on the 2007 order. However, the opinion from the United States Court of Appeals for the Sixth Circuit and the subsequent District Court order determined that plaintiff was entitled to an award of attorney fees and costs. It did not address how plaintiff was to enforce that award.

> The current complaint raises issues relating to the method of enforcing the purported entitlement to attorney's fees, which was the same issue in the 2006 complaint. As explained in the September 20 opinion, but actions originated from attorney fees and costs that were incurred in representing the decedent, Rosa Louise Parks, in a federal lawsuit against the rap group OutKast and from the

-3-

contingency fee agreement signed by the decedent in 1999. A single group of operative facts gave rise to plaintiff's assertion of relief in both cases. In the 2006 complaint, plaintiff requested $192,000 in unpaid attorney fees for services rendered in the OutKast lawsuit, which is the same amount he requests in the current complaint. Plaintiff did not also pursue fees and costs on a theory of an attorney's charging lien in the 2006 action, despite the allegation being based on the same facts as the claim theory. Thus, plaintiff has failed to meet its burden and establish palpable error.

Plaintiff now appeals as of right.

## II. ANALYSIS

On appeal, plaintiff argues that the trial court erred in finding that the doctrine of res judicata operated to bar its 2016 action. We disagree.

Summary disposition is appropriate under MCR 2.116(C)(7) if a claim is barred by a prior judgment. *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008).

> Under MCR 2.116(C)(7) (claim barred by prior judgment, i.e., res judicata), this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [*RDM Holdings,* 281 Mich App at 687 (citations omitted).]

"The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Begin v Mich Bell Tel Co*, 284 Mich App 581, 598; 773 NW2d 271 (2009), overruled on other grounds 494 Mich 10; 831 NW2d 849 (2013).

> Consequently, res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical. A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies.

> Michigan courts have broadly applied the doctrine of res judicata. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [*Dart v Dart,* 460 Mich 573, 586; 597 NW2d 82 (1999) (internal citations omitted).]

"Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation,* and whether they form a convenient trial unit." *Adair v State*, 470 Mich 105, 125; 680 NW2d 386, 398 (2004), quoting 46 Am Jur 2d, Judgments 533, p 801. "The doctrine applies to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata." [*In re Consumers Energy Application For Rate Increase*, 291 Mich App 106, 121; 804 NW2d 574 (2010), quoting *Peterson Novelties, Inc v City of Berkley,* 259 Mich App 1, 11; 672 NW2d 351 (2003).

First, we reject plaintiff's argument to the extent plaintiff cites federal law and claims that the distribution order acted to extinguish the underlying debt and create a new cause of action. Plaintiff never made this argument in the probate court.

> Michigan generally follows the "raise or waive" rule of appellate review. Under our jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court. Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a failure to timely raise an issue waives review of that issue on appeal.

> The principal rationale for the rule is based in the nature of the adversarial process and judicial efficiency. By limiting appellate review to those issues raised and argued in the trial court, and holding all other issues waived, appellate courts require litigants to raise and frame their arguments at a time when their opponents may respond to them factually. This practice also avoids the untenable result of permitting an unsuccessful litigant to prevail by avoiding its tactical decisions that proved unsuccessful. Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention. Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute. [*Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (footnotes omitted).]

Additionally, we decline to consider plaintiff's argument that its 2016 complaint was based on the 2007 federal distribution order and was, therefore, not part of the time component for the 2006 transaction. "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Michigan*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

Plaintiff's 2016 action is barred by res judicata. Plaintiff does not dispute that the action involves the same parties and that the 2006 action was decided on the merits. The only remaining factor is whether the 2016 claim could have been brought in the 2006 action. Plaintiff has not answered why it was precluded from bringing a claim for an attorney charging lien in its prior action. The fact remains that both in 2006 and then 10 years later in 2016, the operative facts centered on the contingency fee agreement.

Plaintiff cites *Oldham v Pedrie*, 2015 Colorado Court of Appeals 95 (July 16, 2015), in support of its claim that a secured creditor's lien is not extinguished when the creditor presents an "unconditional" or unsecure claim against a decedent's estate and fails to pursue the disallowed claim within 63 days. Plaintiff argued that its 2006 claim was presented as a general unsecured claim and was therefore analogous to the unconditional claim in *Oldham*.

*Oldham* does not help plaintiff's case. The Colorado Court of Appeals held that "under the Colorado and Michigan probate codes, a secured creditor's lien on real property is not extinguished when the creditor presents an unconditional claim[1] against a decedent's estate but does not pursue a disallowed claim within sixty-three days." *Oldham*, ___ P 3d ___ (2016 COA 95). The case at bar does not involve real property or a mortgage. Moreover, the *Oldham* case had nothing to do with res judicata. At issue in that case was whether the mortgagee could still seek to foreclose on property under a deed even though the estate denied the mortgagee's claim. Here, plaintiff's 2006 action was dismissed as timely. Nothing in *Oldham* helps plaintiff rehabilitate its claim.

Affirmed. Having prevailed in full, defendant may tax costs. MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ William B. Murphy
/s/ Michael J. Riordan

---

[1] "A conditional claim is one where a secured creditor expressly asserts the right to recover from the assets of an estate any amount not provided by the security." *Oldham*, ___ P 3d ___ (2016 COA 95), n 1.