# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

ADMIRE v AUTO-OWNERS INSURANCE COMPANY

Docket No. 142842. Argued November 14, 2012 (Calendar No. 2). Decided May 23, 2013.

Kenneth Admire, through his guardian Russ Admire, brought an action in the Ingham Circuit Court against Auto-Owners Insurance Company, seeking payment of personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.* Kenneth was seriously injured when the motorcycle he was riding collided with a car being operated by an insured of Auto-Owners. Following the accident, Kenneth required wheelchair-accessible transportation. On three prior occasions, Auto-Owners had agreed to pay the full cost of purchasing a van modified to accommodate Kenneth's wheelchair. Under the agreements, Auto-Owners would purchase the van and pay for the necessary modifications with the expectation that the van would last for seven years. At the end of that period, Kenneth's guardian would give notice of his intent to purchase a new van and the parties would enter a new transportation purchase agreement. In December 2006, Kenneth's guardian gave Auto-Owners notice of his intent to purchase a new van. In response, Auto-Owners stated that it was not obligated to pay the base purchase price of a new van, but that it would pay for the necessary modifications if Kenneth's guardian purchased a new vehicle for him. Kenneth's guardian purchased the new van for Kenneth, and after the cost of the modifications was reimbursed and the trade-in value was applied, Kenneth was left with $18,388.50 in out-of-pocket expenses for the modified van. Kenneth brought suit seeking reimbursement. Auto-Owners moved for summary disposition. The Ingham Circuit Court, Thomas L. Brown. J., denied the motion and, instead, granted summary disposition in favor of Kenneth. Auto-Owners appealed. The Court of Appeals, METER, P.J., and FITZGERALD and M. J. KELLY, JJ., affirmed in an unpublished opinion per curiam, issued February 15, 2011 (Docket No. 289080). Auto-Owners sought leave to appeal. The Supreme Court granted and heard oral argument on the application, 490 Mich 871 (2011), and subsequently granted leave to appeal, 491 Mich 874 (2012).

In an opinion by Justice ZAHRA, joined by Chief Justice YOUNG and Justices MARKMAN and MARY BETH KELLY, the Supreme Court *held*:

MCL 500.3107(1)(a) permits an injured person to recover PIP benefits from an insurer for allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for the injured person's care, recovery, or rehabilitation. Ordinary, everyday products, services, and accommodations are not compensable under the statute because those expenses are not for the claimant's care, recovery, or rehabilitation. A mere change in the injured person's postaccident expenses is insufficient to satisfy the statutory

criteria. A new expense must be of a wholly different essential character than expenses borne by the person before the accident to show that it is for the injured person's care, recovery, or rehabilitation. If an expense is new in its essential character, the statute requires that it be covered in full regardless of whether the expense represents an increase or decrease in the person's preaccident costs. A combined product or accommodation results from an ordinary expense, unchanged as a result of the injury, being joined with an accommodation or product that is actually for the injured person's care, recovery, or rehabilitation. An integrated product or accommodation involves the blending of an ordinary expense with one that is for the injured person's care, recovery, or rehabilitation in a way that the resulting product or accommodation cannot be separated easily into unit costs. MCL 500.3107(1)(a) requires the insurer to cover integrated products and accommodations in full because the entire expense, including those portions of the expense that might otherwise be considered ordinary, is necessary for the person's care, recovery, or rehabilitation. However, a combined product or accommodation can be easily separated into components related to the injured person's care, recovery, or rehabilitation and components unrelated to that care, recovery, or rehabilitation. When considering a combined product or accommodation only the expenses for those components related to the injured person's care, recovery, or rehabilitation are actually compensable. In this case, the base price of the van is an ordinary transportation expense of the same essential character as Kenneth would have incurred regardless of whether he was injured in an accident. Accordingly, the statute does not require that Auto-Owners reimburse Kenneth for the base price of the van. Auto-Owners met its statutory obligation to pay for the transportation expenses recoverable under the statute, including transportation to and from Kenneth's medical appointments, by paying for the van's modifications and reimbursing him for mileage to and from his medical appointments. The Court of Appeals erred by concluding that the base price of the van was compensable. To the extent that Court of Appeals opinions in *Ward v Titan Ins Co*, 287 Mich App 552 (2010), *Hoover v Mich Mut Ins Co*, 281 Mich App 617 (2008), and *Begin v Mich Bell Tel Co*, 284 Mich App 581 (2009), were inconsistent with the opinion in this case, they were overruled. The Court of Appeals also erred by unnecessarily concluding that the parties' most recent transportation purchase agreement was ambiguous regarding whether Auto-Owners was contractually obligated to reimburse Kenneth for the base price of the van regardless of the requirements of the no-fault insurance act. Kenneth had waived that argument by failing to raise it in his complaint or argue it to the trial court.

Judgment of the Court of Appeals reversed in part and vacated in part; case remanded to the circuit court for entry of summary disposition in favor of Auto-Owners.

Justice CAVANAGH, dissenting, rejected the majority's interpretation of MCL 500.3107(1)(a), asserting that Justice MARILYN KELLY set forth the proper interpretation of the statute in her dissent in *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521 (2005). Justice CAVANAGH would have affirmed the judgment of the Court of Appeals because Kenneth was entitled to PIP benefits under the *Griffith* dissent's interpretation of the relevant statutory provisions. The majority's contrary interpretation was not supported by the statutory language, was inconsistent with the legislative intent, and provided little assistance to bench and bar. Moreover, even under the majority's faulty statutory interpretation, Kenneth was entitled to reimbursement for the full cost of the van because, using the definition articulated by the majority, it was an integrated product. Because of the accident Kenneth could only use a

modified van for personal transportation.  Thus, the van itself and the modifications were both necessary for Kenneth's care and could not be easily separated.

Justices MᶜCORMACK and VIVIANO took no part in the decision of this case.

©2013 State of Michigan

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED May 23, 2013

STATE OF MICHIGAN

SUPREME COURT

KENNETH ADMIRE, through his guardian,
RUSS ADMIRE,

       Plaintiff-Appellee,

v                            No. 142842

AUTO-OWNERS INSURANCE
COMPANY,

       Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except MCCORMACK and VIVIANO, JJ.)

ZAHRA, J.

At issue in this case is whether Michigan's no-fault insurance act[1] requires defendant, Auto-Owners Insurance Company, to pay the entire cost of a van modified to accommodate the plaintiff's wheelchair, including both the base price of the van and the separately introduced modifications. We conclude that defendant is only required to pay

---

[1] MCL 500.3101 *et seq.*

for the modifications because only the modifications are allowable expenses "for an injured person's care, recovery, or rehabilitation" under MCL 500.3107(1)(a). Because the base price of the van is an ordinary transportation expense—an expense that is as necessary for the uninjured as the injured—and is easily separated from the modifications, defendant is not required to pay for it under the no-fault insurance act. Accordingly, we reverse the Court of Appeals' decision to the extent it held otherwise. Furthermore, at the trial court, plaintiff, Kenneth Admire, never argued that defendant had contractually agreed to reimburse him for the base price of the van, thereby waiving that issue. Thus, we need not determine whether the Court of Appeals correctly concluded that the parties' agreement was ambiguous, and we vacate that portion of the Court of Appeals' judgment. Plaintiff's application for leave to appeal as cross-appellant is denied, and the case is remanded to the trial court for entry of summary disposition in defendant's favor.

## I. FACTS AND PROCEEDINGS

In 1987, plaintiff suffered catastrophic injuries when the motorcycle he was riding collided with a car being operated by an insured of defendant. Plaintiff's injuries left him unable to speak or walk and rendered his entire right side virtually useless. A family member tends to all of plaintiff's personal and financial affairs.

Plaintiff requires wheelchair-accessible transportation to go to work five days a week, visit his family, attend medical appointments, and get around the community. On three prior occasions, defendant agreed to pay the full cost of purchasing a van large enough for plaintiff to get in and out while remaining in his wheelchair. Defendant also agreed to pay the cost of modifying the vehicle to make it wheelchair-accessible. In

2

1988, 1994, and 2000, plaintiff and defendant entered into contracts under which defendant purchased a van and paid for the necessary modifications with the expectation that the van would last for seven years. At the end of the van's life, plaintiff would give defendant notice of his intent to purchase a new van, and the parties would enter a new agreement. The most recent "Transportation Purchase Agreement" was executed on April 26, 2000. It specified that plaintiff was to notify defendant 60 days before purchasing a new van and that the old van's value would be applied to the purchase price of the new van.

In December 2006, plaintiff, through his guardian, notified defendant that it was time to purchase a new van. In January 2007, defendant informed plaintiff by letter that it had determined that it was not obligated to pay the base purchase price of a new van under the transportation purchase agreement or the no-fault insurance act. Defendant acknowledged that, pursuant to the transportation purchase agreement, the "current van should be traded in toward the price of a new van" should plaintiff choose to purchase a new van himself. Defendant further stated that it would "pay for the necessary medical modifications needed on any vehicle purchased . . . as well as . . . any medical mileage incurred in relation to Mr. Admire's motor vehicle accident . . . ." Plaintiff's guardian purchased the van for him, and after the modifications were reimbursed and the trade-in value was applied, plaintiff was left with out-of-pocket expenses of $18,388.50.

Plaintiff sued defendant for reimbursement of the $18,388.50, claiming that it was an allowable expense under Michigan's no-fault insurance act. Defendant moved for summary disposition, arguing that this Court's decision in *Griffith v State Farm Mutual*

3

*Automobile Insurance Co*[2] required it to pay for medically necessary modifications, but not the base price of the van. Plaintiff argued that conflicting precedent interpreted the no-fault insurance act to require reimbursement for the entire modified van. The Ingham Circuit Court denied defendant's motion for summary disposition and instead granted summary disposition in favor of plaintiff.

Defendant appealed by right in the Court of Appeals, which affirmed in an unpublished decision.[3] In dicta, the Court of Appeals panel concluded that the transportation purchase agreement was ambiguous regarding who had the responsibility to pay the base price of a new van:

> On its face, the contract does not provide that defendant is required to buy a new van. It says that the van shall be traded in on a replacement van but it does not say that defendant will pay for the replacement. However, the contract also does not say that plaintiff is responsible for buying the new van.[4]

Accordingly, the panel held that "the trial court erred in evidently concluding that the transportation purchase agreement mandated that it grant summary disposition to plaintiff."[5]

---

[2] *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521; 697 NW2d 895 (2005).

[3] *Admire v Auto-Owners Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued February 15, 2011 (Docket No. 289080).

[4] *Id.* at 3.

[5] *Id.* The Court of Appeals erred by considering the implications of the transportation purchase agreement because plaintiff never raised that issue in his complaint or argued it at the trial court. Therefore, the issue was waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("Michigan generally follows the 'raise or waive' rule of appellate review. Under our jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court.") (citation omitted).

The Court of Appeals panel then proceeded to address whether Michigan's no-fault insurance act required reimbursement for both the purchase price of a van and the modifications to accommodate the insured's disability. Defendant again relied primarily on this Court's decision in *Griffith*, which held that the no-fault insurance act did not require the insurer to reimburse the insured for food costs absent evidence that the food was somehow different than what was required before the plaintiff's accident.[6] So, reasoned defendant, the base price of the van was not compensable because plaintiff required transportation before and after the accident; the modifications were, however, compensable because they were not required before the accident.

The panel disagreed with defendant's characterization of *Griffith*, instead relying on its own decision in *Begin v Michigan Bell Telephone Co*.[7] As in this case, *Begin* involved an insurer that had refused to compensate a claimant for a modified van. The panel in this case agreed with the reasoning in *Begin* that a van and its modifications are "so blended . . . that the whole cost is an allowable expense if it satisfies the statutory criteria for being sufficiently related to injuries sustained in a motor vehicle accident . . . ."[8] Thus, like the *Begin* Court, the panel reasoned that a modified van was more like food provided at a care facility (which *Griffith* acknowledged was covered by the no-fault insurance act) than ordinary food eaten at home by an injured person (which *Griffith* determined was not covered). The panel concluded that because plaintiff could

---

[6] *Griffith*, 472 Mich at 535-536.

[7] *Begin v Mich Bell Tel Co*, 284 Mich App 581; 773 NW2d 271 (2009).

[8] *Id.* at 596-597.

5

not drive an unmodified vehicle, unlike the *Griffith* plaintiff who could still eat ordinary food, the modified vehicle must be covered in its entirety.[9]

Defendant sought leave to appeal. After hearing oral arguments on the application,[10] we granted leave to appeal to determine whether the no-fault insurance act requires reimbursement for the entire cost of the modified vehicle.[11]

## II. STANDARD OF REVIEW

Whether MCL 500.3107(1)(a) requires an insurer to reimburse an insured claimant for the full cost of a vehicle and modifications necessary to accommodate the insured claimant's disability is a question of statutory interpretation that this Court reviews de novo.[12]

## III. ANALYSIS

## A. LEGAL BACKGROUND

MCL 500.3107(1)(a) permits an injured person to recover personal injury protection (PIP) benefits from an insurer for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." This Court has often been called on to determine the reach of this provision.[13] This case particularly

---

[9] *Admire*, unpub op at 5.

[10] *Admire v Auto-Owners Ins Co*, 490 Mich 871 (2011).

[11] *Admire v Auto-Owners Ins Co*, 491 Mich 874 (2012).

[12] *Griffith*, 472 Mich at 525-526.

[13] See, e.g., *Johnson v Recca*, 492 Mich 169, 178-180; 821 NW2d 520 (2012) (holding that replacement services did not qualify as allowable expenses); *Douglas v Allstate Ins*

6

implicates our 2005 decision in *Griffith*, in which we interpreted the clause "for an injured person's care, recovery, or rehabilitation."[14] The plaintiff's husband in *Griffith*, Douglas Griffith, suffered from severe brain damage stemming from a motor vehicle accident.[15] For the duration of Griffith's hospitalization and his stay at a 24-hour nursing facility, his insurer, State Farm Mutual Automobile Insurance Company, covered ordinary expenses, including Griffith's food.[16] On his return home he still required assistance with basic tasks like eating and bathing. State Farm refused to reimburse the plaintiff for Griffith's food because it determined that the food costs were not an "allowable expense" under MCL 500.3107(1)(a).[17]

In determining whether the particular expense was for "'reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation,'" this Court defined the terms "care," "recovery," and "rehabilitation."[18]

---

*Co*, 492 Mich 241, 277-278; 821 NW2d 472 (2012) (explaining the dichotomy between allowable expenses and replacement services as it related to spousal care); *Krohn v Home-Owners Ins Co*, 490 Mich 145, 163-167; 802 NW2d 281 (2011) (holding that an experimental procedure was not an allowable expense); *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 6; 795 NW2d 101 (2009) (holding that the reasonableness requirement of MCL 500.3107 did not apply to MCL 500.3104(2)).

[14] *Griffith*, 472 Mich at 534-540.

[15] *Id.* at 524.

[16] *Id.* at 524-525.

[17] *Id.* at 525.

[18] *Id.*, at 532-536, quoting MCL 500.3107(1)(a). Because there was no dispute that Griffith was an injured person, the key issue was whether the ordinary food he was eating was reasonably necessary for his care, recovery, or rehabilitation.

This Court gave "recovery" and "rehabilitation" their dictionary definitions, defining "recovery" as "'restoration or return to any former and better condition, [especially] to health from sickness, injury, addiction, etc.,'" and "rehabilitate" as "'to restore or bring to a condition of good health, ability to work, or productive activity.'"[19] Defining "care" required this Court to consider the term's meaning in light of the statutory terms "recovery" and "rehabilitation":

> Generally, "care" means "protection; charge," and "to make provision." *Random House Webster's College Dictionary* (2001). Thus, taken in isolation, the word "care" can be broadly construed to encompass *anything* that is reasonably necessary to the provision of a person's protection or charge. But we have consistently held that "[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). Therefore, we must neither read "care" so broadly as to render nugatory "recovery and rehabilitation" nor construe "care" so narrowly that the term is mere surplusage. "Care" must have a meaning that is related to, but distinct from, "recovery and rehabilitation."

> As an initial matter, it is important to note that the statute does not require compensation for any item that is reasonably necessary to a person's care in general. Instead, the statute specifically limits compensation to charges for products or services that are reasonably necessary "for an *injured person's* care, recovery, or rehabilitation." (Emphasis added.) This context suggests that "care" must be related to the insured's injuries.

> \* \* \*

> "Care" must have a meaning that is broader than "recovery" and "rehabilitation" but is not so broad as to render those terms nugatory. As noted above, both "recovery" and "rehabilitation" refer to an underlying injury; likewise, the statute as a whole applies only to an "injured person." It follows that the Legislature intended to limit the scope of the term "care"

---

[19] *Griffith*, 472 Mich at 534, citing *Random House Webster's College Dictionary* (2001).

8

to expenses for those products, services, or accommodations whose provision is necessitated by the injury sustained in the motor vehicle accident. "Care" is broader than "recovery" and "rehabilitation" because it may encompass expenses for products, services, and accommodations that are necessary because of the accident but that may not restore a person to his preinjury state.[20]

Having determined at the outset that Griffith's food could not be for recovery or rehabilitation because it lacked curative properties, this Court proceeded to explain that ordinary food also could not be for Griffith's care. This Court determined that Griffith's food costs failed to satisfy the requirements of MCL 500.3107(1)(a) because the food was Griffith's "ordinary means of sustenance" and "if Griffith had never sustained, or were to fully recover from, his injuries, his dietary needs would be no different than they are now."[21] Therefore, this Court concluded, the food costs were not an allowable expense under the statute.[22]

This Court drew an important distinction between ordinary food eaten by an injured person at home and ordinary food provided by a hospital during the injured person's stay, stating that

---

[20] *Griffith*, 472 Mich at 533-535. Justice CAVANAGH would employ the analysis from Justice MARILYN KELLY's dissent in *Griffith*, defining "care" as "the provision of what is necessary for the welfare and protection of someone," to conclude that defendant should reimburse plaintiff for the cost of a van because transportation is necessary for plaintiff's welfare. *Id.* at 547 (KELLY, J. dissenting) (citation and quotation marks omitted). While Justice CAVANAGH's position is unsurprising—he, after all, supported the dissent in *Griffith*—it was rejected by the collective wisdom of this Court as inconsistent with MCL 500.3107(1)(a) in *Griffith*, and we reject it again here. We reiterate that the *Griffith* dissent defined "care" so broadly that "recovery and rehabilitation" were impermissibly stripped of meaning. See *id.* at 534 n 10.

[21] *Id.* at 536.

[22] *Id.*

9

it is "reasonably necessary" for an insured to consume hospital food during in-patient treatment given the limited dining options available. Although an injured person would need to consume food regardless of his injuries, he would not need to eat *that particular food* or bear the cost associated with it. Thus, hospital food is analogous to a type of special diet or select diet necessary for an injured person's recovery. Because an insured in an institutional setting is required to eat "hospital food," such food costs are necessary for an insured's "care, recovery, or rehabilitation" while in such a setting. Once an injured person leaves the institutional setting, however, he may resume eating a normal diet just as he would have had he not suffered any injury and is no longer required to bear the costs of hospital food, which are part of the unqualified unit cost of hospital treatment.[23]

This Court specifically noted that MCL 500.3107(1)(a) requires insurers to cover hospital food as an allowable expense for the care of an injured person because the person is required to eat hospital food precisely because of his or her need for care in the hospital.[24] Finally, this Court concluded that requiring an insurer to reimburse the insured for ordinary, everyday expenses merely because of a remote relationship to the insured's care undermines the no-fault insurance act's goal of cost containment.[25]

Several Court of Appeals decisions have attempted to interpret MCL 500.3107(1)(a) in light of *Griffith*, yet they have taken inconsistent approaches in *Griffith*'s application. For instance, the Court of Appeals applied *Griffith* to housing expenses in *Ward v Titan Insurance Co*.[26] The majority adopted an incremental approach to allowable expenses and stated the following:

---

[23] *Id.* at 537-538.

[24] *Id.* at 538 n 14.

[25] *Id.* at 539.

[26] *Ward v Titan Ins Co*, 287 Mich App 552; 791 NW2d 488 (2010).

10

Under the *Griffith* analysis, plaintiff's housing costs are only compensable to the extent that those costs became greater as a result of the accident. Plaintiff must show that his housing expenses are different from those of an uninjured person, for example, by showing that the rental cost for handicapped accessible housing is higher than the rental cost of ordinary housing. In the absence of that kind of factual record, the trial court erred by concluding that plaintiff was entitled to housing costs compensation merely on the basis of the amount plaintiff was currently paying in rent, for a residence that the record does not even demonstrate was handicapped accessible.[27]

As a result, the court reversed the trial court's award of the entire amount of the insured's postinjury housing, instead holding that an insurer is only liable for the increase in housing costs attributable to the injury.

Similarly, in *Hoover v Michigan Mutual Insurance Co*,[28] the Court of Appeals applied *Griffith* to other household expenses, including real estate tax bills, utility bills, homeowner's insurance, home maintenance, telephone bills, and security system costs. The *Hoover* Court understood *Griffith* as requiring "but for" causation between the claimed expense and the injury:

At its core, the holding in *Griffith* requires a court to determine whether expenses would not have been incurred *but for* the accident and resulting injuries. Stated otherwise, the question is whether the expenses would have been incurred in the course of an ordinary life unmarred by an accident. And if they would have been incurred, like the ordinary food costs at issue in *Griffith*, a causal connection between the expenses and the accidental bodily injury would be lacking and it could not be said that the act of providing products, services, and accommodations was necessitated by the accidental bodily injury.[29]

---

[27] *Id.* at 557-558 (citation omitted).

[28] *Hoover v Mich Mut Ins Co*, 281 Mich App 617; 761 NW2d 801 (2008).

[29] *Id.* at 628.

The *Hoover* Court understood *Griffith* as requiring a comparison of the injured person's preinjury expenses to the injured person's postinjury expenses, with the insurer covering the difference.[30]

But the Court of Appeals adopted a different approach in *Begin*, which presented a similar factual situation to the instant case: a dispute over whether an insurer was responsible for the base price of a van for the insured plaintiff.[31]   The *Begin* Court disavowed any interpretation of *Griffith* that required a comparison to the injured person's preinjury expenses:

> [T]he *Griffith* Court, when discussing the cost of food provided to an injured person in an institutional setting, did not suggest that only the marginal increase in the cost of such food served in an institutional setting would be an allowable expense.  Nor did the Court suggest that only the marginal cost of modifying regular shoes would be a recoverable "allowable expense" under MCL 500.3107(1)(a).  Rather, in each example, the product, service, or accommodation used by the injured person before the accident is so blended with another product, service, or accommodation that the whole cost is an allowable expense if it satisfies the statutory criteria of being sufficiently related to injuries sustained in a motor vehicle accident and if it is a reasonable charge and reasonably necessary for the injured person's care, recovery, or rehabilitation under MCL 500.3107(1)(a).[32]

Thus, *Begin* held, if a particular product, service, or accommodation satisfies the requirements of MCL 500.3107(1)(a), then the insurer must also cover as "allowable expenses" all associated expenses that are "blended" with the qualifying expense.[33]  This

---

[30] *Id.* at 629-631.

[31] *Begin*, 284 Mich App at 583-584.

[32] *Id.* at 596-597.

[33] *Id.*

view directly conflicts with the "setoff" analysis promulgated in *Ward* and *Hoover*. Because the statutory language plainly cannot support these divergent interpretations, we now seek to clarify the reach of MCL 500.3107(1)(a).

## B.  INTERPRETATION

As stated, MCL 500.3107(1)(a) permits an injured person to recover PIP benefits from an insurer for, "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  Under *Griffith*, this provision requires that "an 'allowable expense' must be 'for' one of the following: (1) an injured person's care, (2) his recovery, or (3) his rehabilitation."[34]

This case requires us to clarify when a particular product, service, or accommodation is actually "for" the injured person's "care, recovery, or rehabilitation." In this context, the word "for" as a preposition "implies a causal connection"[35] and is defined as "'with the object or purpose of . . . .'"[36]  Accordingly, a claimant can recover as an allowable expense the charge for a product, service, or accommodation that has the object or purpose of effectuating the injured person's care, recovery, or rehabilitation. The causal connection is further implied in the statutory language making compensable only those products, services, or accommodations that are "for an *injured person's* care,

---

[34] *Griffith*, 472 Mich at 532 n 8.

[35] *Id.* at 531.

[36] *Id.* at 531 n 6, quoting *Random House Webster's College Dictionary* (1997).  The same definition is found in *Random House Webster's College Dictionary* (2005).

recovery, and rehabilitation."[37]   This language suggests that any product, service, or accommodation consumed by an *uninjured person* over the course of his or her everyday life cannot qualify because it lacks the requisite causal connection with effectuating the injured person's care, recovery, or rehabilitation.  An ordinary, everyday expense simply cannot have the object or purpose of effectuating an *injured person's* care, recovery, or rehabilitation because it is incurred by *everyone* whether injured or not.  For instance, *Griffith* explained that "the food that Griffith consumes is simply an ordinary means of sustenance rather than a treatment for his 'care, recovery, or rehabilitation,'" because "if Griffith had never sustained, or were to fully recover from, his injuries, his dietary needs would be no different than they are now."[38]   In sum, an ordinary, everyday product, service, or accommodation is not compensable under MCL 500.3107(1)(a) because that expense cannot be *for* the claimant's care, recovery, or rehabilitation.[39]

Further, nothing in the statutory language of MCL 500.3107(1)(a) supports the notion that postinjury allowable expenses should be reduced by the margin of the injured person's preinjury expenses of the same character.  Complying with MCL 500.3107(1)(a) and determining what products, services, and accommodations are actually *for* the injured person's care, recovery, or rehabilitation requires a careful examination of the injured person's postaccident expenses.  A mere change in the injured person's postaccident

---

[37] MCL 500.3107(1)(a) (emphasis added).

[38] *Griffith*, 472 Mich at 536.

[39] The noncompensability of the ordinary food the insured in *Griffith* consumed at home exemplifies this principle.

14

expenses is insufficient to satisfy MCL 500.3107(1)(a); the new expense must be of a wholly different essential character than expenses borne by the person before the accident to show that it is *for* the injured person's care, recovery, or rehabilitation. But if an expense is new in its essential character, and thus actually *for* the injured person's care, recovery, or rehabilitation, MCL 500.3107(1)(a) requires that it be covered in full regardless of whether the expense represents an increase or decrease in the injured person's preaccident costs.[40] Indeed, the provision states that allowable expenses consist of "*all* reasonable charges incurred for reasonably necessary products, services and accommodations . . . ."[41] Thus, if a product, service, or accommodation satisfies the statutory criteria, it is *fully* compensable.

Special accommodations or modifications to an ordinary item present a particular challenge. A "combined" product or accommodation results from an ordinary expense, unchanged as a result of the injury, being joined with an accommodation or product that is actually *for* the injured person's care, recovery, or rehabilitation. An "integrated" product or accommodation involves the blending of an ordinary expense with one that is

---

[40] For example, if before an accident the claimant wore budget shoes costing $10 but as a result of the accident required custom medical shoes costing $100, the claimant would be entitled to the full $100, not merely the $90 difference between the pre- and postaccident shoe expenses. But if before the accident the claimant wore designer shoes costing $300, the claimant would still be entitled to the full $100 cost of the custom shoes because the custom shoes represent a change in character from the claimant's preinjury needs and are thus *for* the claimant's care, recovery or rehabilitation. Of course, MCL 500.3107(1)(a) also requires allowable expenses to be "reasonable charges" and they must be "reasonably necessary" for the claimant's care, recovery, or rehabilitation.

[41] MCL 500.3107(1)(a) (emphasis added).

15

for the injured person's care, recovery, or rehabilitation in a way that the resulting product or accommodation cannot be separated easily into unit costs. Unlike an integrated product or accommodation, a combined product or accommodation can be separated easily, both conceptually and physically, so that the fact-finder can identify which costs are of a new character and are thus *for* the injured person's care, recovery, or rehabilitation and which costs are ordinary, everyday expenses that are unchanged after the accident. As this Court suggested in *Griffith*, MCL 500.3107(1)(a) requires the insurer to cover a truly integrated product or accommodation in full because the entire expense, including the portions that might otherwise be considered ordinary, is necessary for the injured person's care, recovery, or rehabilitation.[42] But because a combined product or accommodation can be easily separated into components related to the injured person's care, recovery, or rehabilitation and components unrelated to that care, recovery, or rehabilitation, only the related expenses are actually compensable.[43] MCL 500.3107(1)(a) mandates this result because, when the product or accommodation can be easily separated into an ordinary expense and an expense *for* care, recovery, or rehabilitation, requiring the insurer to pay for the ordinary expenses would destroy the

---

[42] See *Griffith*, 472 Mich at 537-538.

[43] For an example of a combined product or accommodation, consider a medical insole that an injured person might have to put in his or her shoe following an accident. Certainly the insole is compensable as a product or accommodation for the injured person's care, recovery, or rehabilitation. But the easy physical and conceptual separability of the insole and the actual shoe means that the shoe itself—an ordinary expense—will not be compensable because it is not *for* the injured person's care, recovery, or rehabilitation.

16

cost-containment aspect of the no-fault insurance act, something of which this Court has long been mindful.[44]

This analysis is consistent with this Court's application of MCL 500.3107(1)(a) in *Griffith*. In its discussion of insurance coverage for hospital food during the insured's hospital stay, the *Griffith* Court stated that compensation was required because the insured was required to eat "*that particular food*."[45] This is an example of an integrated accommodation. The food, clothing, shelter, and any other ordinary products that are provided by the hospital as part and parcel of the hospital stay are not easily separated from the products, services, and accommodations provided by the hospital for the injured person's care. Thus, the statute requires the insurer to pay the entire cost. The same could be said for the custom medical shoes briefly discussed in *Griffith*.[46] When a medical products company produces a custom shoe, the shoe is an integrated product because the medical nature of the shoe, which is for the injured person's care, recovery,

---

[44] See, e.g., *Griffith*, 472 Mich at 539 ("We have always been cognizant of this potential problem [obliterating cost containment] when interpreting the no-fault act . . . ."); *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 89; 549 NW2d 834 (1996) (stating that "the no-fault insurance system . . . is designed to provide victims with assured, adequate, and prompt reparations at the lowest cost to both the individuals and the no-fault system"); *O'Donnell v State Farm Mut Auto Ins Co*, 404 Mich 524, 547; 273 NW2d 829 (1979) ("Because the first-party insurance proposed by the act was to be compulsory, it was important that the premiums to be charged by the insurance companies be maintained as low as possible. Otherwise, the poor and the disadvantaged people of the state might not be able to obtain the necessary insurance.").

[45] *Griffith*, 472 Mich at 537.

[46] *Id.* at 535 n 12.

17

or rehabilitation, cannot be separated from the ordinary need for shoes by an uninjured person. Thus, the entire cost of the shoe is an allowable expense.

In sum, MCL 500.3107(1)(a) only requires an insurer to pay for products, services, and accommodations that are reasonably necessary to the object or purpose of "an injured person's care, recovery, or rehabilitation." Postaccident expenses of a wholly new essential character satisfy the statutorily required causal connection that expenses be *for* the injured person's care, recovery, or rehabilitation. Ordinary expenses that are the same for an injured and an uninjured person are not recoverable at all because the claimant cannot show that the expense is *for* his or her care, recovery, or rehabilitation. However, if an expense satisfies the statute, then it is recoverable in full; there is no setoff based on the injured person's preinjury expenses of the same character. Some products, services, or accommodations might otherwise be ordinary but are so integrated with a product, service, or accommodation that is actually *for* the injured person's care, recovery, or rehabilitation that the entire product, service, or accommodation must be included as an allowable expense under MCL 500.3107(1)(a). But if the ordinary expense is merely combined with a product, service, or accommodation for the injured person's care, recovery, or rehabilitation in a way that is physically and conceptually separable, the ordinary expense fails to satisfy the statute and is not compensable.[47]

---

[47] Justice CAVANAGH suggests that our interpretation injects language into the statute. Quite the opposite. As this Court has often done, we merely highlight guideposts inherent in the statutory language to assist Michigan's citizens—inside and outside the litigation context—in faithfully administering the statute's plain language in the myriad situations in which it applies. See, e.g., *Krohn v Home-Owners Ins Co*, 490 Mich 145, 163-164; 802 NW2d 281 (2011) (concluding that a surgical procedure cannot be "reasonably necessary" under MCL 500.3107(1)(a) unless a plaintiff provides objective

## C. APPLICATION

Applying this standard here, we conclude that the base price of the van is not an allowable expense under MCL 500.3107(1)(a). The statute only entitles plaintiff to reimbursement for products, services, and accommodations that are actually for his care, recovery, or rehabilitation, and only the van's modifications rise to that standard. The base price of the van is an ordinary transportation expense of the same essential character as plaintiff would have incurred regardless of whether he was injured in an accident. While plaintiff's choice of transportation before his injury might not have been a van, the essential character of plaintiff's preinjury need for transportation has not changed. Like Griffith's need for sustenance, had plaintiff never sustained his injury, or were he to fully recover, his need for ordinary transportation would be unchanged. Accordingly, the statute does not require that defendant reimburse plaintiff for the base price of the van.

Certain transportation expenses may be recoverable under MCL 500.3107(1)(a) because they are part of plaintiff's care, recovery, or rehabilitation. For instance, plaintiff requires some form of transportation to and from his medical appointments. Medically necessary transportation needs represent a change in character from plaintiff's preinjury requirements because the trips would not have been necessary in a life unmarred by

---

and verifiable evidence of the procedure's efficacy); *Frazier v Allstate Ins Co*, 490 Mich 381, 385-386; 808 NW2d 450 (2011) (expounding on the beginning and end of the process of "alighting" as that term is used in MCL 500.3106(1)(c)); *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986) (explaining that an injury arises out of the use of a motor vehicle as a motor vehicle under MCL 500.3105(1) when the "causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for'").

injury. But by paying for the van's modifications and so-called medical mileage, defendant has met its statutory obligations. Indeed, defendant has made it possible—through mileage and modifications—for plaintiff to use his otherwise ordinary transportation to reach medical appointments. But plaintiff cannot show that the van itself, an ordinary form of transportation, is actually for his care, recovery, or rehabilitation. Thus, MCL 500.3107(1)(a) does not require defendant to compensate plaintiff for the base price of the van.

This Court's decision in *Griffith* leads inexorably to this result. The van itself is akin to the food that Griffith was eating at home. The character of plaintiff's general need for transportation—like Griffith's food requirements—did not change as a result of the accident. And unlike the hospital food in *Griffith*, the van does not constitute an integrated product because the modified van, as a whole, was not actually for plaintiff's care, recovery, or rehabilitation. Hospital food is compensable because the injured person is required to eat *that particular food* during the hospital stay for his or her care and recovery.[48] The Court likened hospital food to a special diet.[49] But plaintiff only requires *some form* of transportation for his care, not any *particular form*, so his transportation needs are not akin to a special diet. Indeed, if defendant provided plaintiff with a taxi service that accounted for his disability, defendant would only be required to provide that service for those trips that had the object or purpose of plaintiff's care, recovery, or rehabilitation.

---

[48] *Id.* at 537.

[49] *Id.*

The parties agreed that plaintiff should have a vehicle with modifications as the means for transporting plaintiff on his medically necessary trips. But because the van and the modifications are easily separable, we must determine which expenses are actually for plaintiff's care, recovery, and rehabilitation and which are not.[50] The modifications indisputably have the object or purpose of effectuating plaintiff's care, recovery, or rehabilitation because without the modifications plaintiff could not make use of his ordinary transportation for medically necessary trips. Thus, defendant was required to and did compensate plaintiff for the cost of the modifications pursuant to MCL 500.3107(1)(a). But the van is just a van; and while a van may not have been plaintiff's transportation preference, it remains an ordinary means of transportation used by the injured and uninjured alike.[51]

---

[50] Justice CAVANAGH argues that defendant must pay for the van because the van cannot be separated from plaintiff's general need for transportation and the van itself is for plaintiff's care. But we never suggest that the van can be separated from the general need for transportation. Indeed, driving a van is consistent with plaintiff's general need for transportation. Our focus is on the medically necessary modifications and medical mileage, which *are* separable from plaintiff's general need for transportation. Thus, because only the modifications and medical mileage are *for* plaintiff's care, recovery, or rehabilitation, they are the only items for which defendant must reimburse plaintiff.

[51] Justice CAVANAGH says that the van must be compensable because plaintiff did not require a van before the accident, similar to how the van's medical modifications were unnecessary before the accident. But this argument misconstrues why the modifications are compensable. What makes the modifications compensable is that they represent a change in character from plaintiff's preinjury transportation needs, without which plaintiff could not use ordinary transportation, so they must be *for* plaintiff's care, recovery, or rehabilitation. But the van itself is an ordinary means of transportation, just like the motorcycle plaintiff used for transportation before his accident.

21

Because the character of plaintiff's ordinary transportation needs remains unchanged, he is free to meet those needs in the way that best suits him. If plaintiff had already owned a van, defendant could have modified that van. If plaintiff wanted a Mercedes van, he could pay for the added luxury, and defendant could modify the van as required by statute. However, only the modifications and medical mileage—separable elements that actually represent a change in character from plaintiff's general preinjury transportation requirements—must be compensated pursuant to MCL 500.3107(1)(a).

## IV. CONCLUSION

Our decision in *Griffith* was sound, and we reaffirm that decision here. To the extent that the Court of Appeals' opinions in *Ward*, *Hoover*, or *Begin* are inconsistent with this opinion, they are overruled. In concluding that the base price of the van was compensable, the Court of Appeals in this case misapplied our holding in *Griffith*. We therefore reverse that portion of the Court of Appeals' judgment.

Furthermore, the Court of Appeals erred by unnecessarily concluding that the parties' transportation purchase agreement was ambiguous regarding whether defendant was contractually obligated to reimburse plaintiff for the base price of the van regardless of the no-fault insurance act's requirements. In fact, plaintiff waived the contractual argument by failing to raise it in his complaint or argue it to the trial court at any point.[52]

---

[52] See *Walters*, 481 Mich at 387 ("Michigan generally follows the 'raise or waive' rule of appellate review. Under our jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court.") (citation omitted); *Napier v Jacobs*, 429 Mich 222, 227; 414 NW2d 862 (1987) ("A general rule of trial practice is that failure to timely raise an issue waives review of that issue on appeal.").

Accordingly, we vacate the portion of the Court of Appeals' judgment regarding the parties' contract. Plaintiff's application for leave to appeal as cross-appellant is denied, and the case is remanded to the trial court for entry of summary disposition in favor of defendant.

Brian K. Zahra
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly

23

STATE OF MICHIGAN

SUPREME COURT

KENNETH ADMIRE,

      Plaintiff-Appellee,

v                                 No. 142842

AUTO-OWNERS INSURANCE
COMPANY,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

For nearly a decade now, a majority of this Court has employed what I believe to be an erroneous and confusing statutory interpretation of MCL 500.3107(1)(a). I have often dissented from this approach to Michigan's no-fault act, MCL 500.3101 *et seq*. See, e.g., *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 542-554; 697 NW2d 895 (2005) (MARILYN KELLY, J., dissenting), *Krohn v Home-Owners Ins Co*, 490 Mich 145, 179-197; 802 NW2d 281 (2011) (HATHAWAY, J., dissenting), *Johnson v Recca*, 492 Mich 169, 207; 821 NW2d 520 (2012) (CAVANAGH, J., concurring in the result proposed by HATHAWAY, J., dissenting), and *Douglas v Allstate Ins Co*, 492 Mich 241, 279-295; 821 NW2d 472 (2012) (CAVANAGH, J., dissenting). Instead, I have argued in favor of Michigan's previously well-established interpretation of MCL 500.3107(1)(a). See, e.g., *Griffith*, 472 Mich at 549 (MARILYN KELLY, J., dissenting) (citing *Manley v Detroit Auto Inter–Ins Exch*, 425 Mich 140, 168; 388 NW2d 216 (1986) (BOYLE, J., concurring in part), and *Reed v Citizens Ins Co of America*, 198 Mich App 443; 499 NW2d 22 (1993),

overruled by *Griffith*, 472 Mich 521).   Because the majority's opinion today is an extension of the *Griffith* majority's erroneous interpretation, I respectfully dissent.

## I.  APPLYING THE *GRIFFITH* DISSENT

The key provisions of the no-fault act applicable to this case are MCL 500.3105(1)[1] and MCL 500.3107(1)(a).[2]   I continue to believe that Justice MARILYN KELLY provided the proper interpretation of these statutes in her *Griffith* dissent.   See *Griffith*, 472 Mich at 542-554 (MARILYN KELLY, J., dissenting).   Specifically, MCL 500.3105(1) establishes that an insured is eligible for certain benefits as long as the insured is injured in a motor vehicle accident.   Thus, the only limitations placed on the benefits are the limitations stated in MCL 500.3107(1)(a).   *Id*. at 543-546.   This is true because "the Legislature did not expressly limit the expenses recoverable in no-fault cases to those that the injured person did not require before the injury."   *Id.* at 548.   Thus, it was the *Griffith* majority, not the Legislature, that created the additional restriction that

---

[1] MCL 500.3105(1) states:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

[2] MCL 500.3107(1) states in relevant part:

> [P]ersonal protection insurance benefits are payable for the following:

> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

2

personal injury protection (PIP) benefits are not recoverable for expenses that were necessary before the injury. *Id*.

Applying the *Griffith* dissent's interpretation of the relevant statutory provisions to this case, plaintiff clearly satisfied MCL 500.3105(1) given the catastrophic injuries plaintiff suffered in the motor vehicle accident. Next, it is necessary to determine whether the cost of the van is "reasonably necessary" for plaintiff's "care." As Justice MARILYN KELLY explained, in order to ensure that the word "care" in MCL 500.3107(1)(a) has a meaning independent of the words "rehabilitation" and "recovery," the word "care" should be defined as "the provision of what is necessary for the welfare and protection of someone." *Griffith*, 472 Mich at 547 (citation and quotation marks omitted).[3] Although a van is not as obviously necessary for a person's "welfare and protection" as the food at issue in *Griffith*, I think that the facts presented in this case adequately indicate that the van is reasonably necessary for plaintiff's care because a van is the only mode of personal transportation available that will accommodate plaintiff's severe injuries resulting from the motor vehicle accident.

---

[3] The majority repeats the *Griffith* majority's unfounded claim that this definition of "care" engulfs "rehabilitation" and "recovery." *Griffith*, 472 Mich at 534 n 10. However, as Justice MARILYN KELLY explained, under the doctrine of *noscitur a sociis*, "'care' fits with 'recovery' and 'rehabilitation' when 'care' is interpreted broadly to mean 'the provision of what is necessary for the welfare and protection of someone'" because "[t]he Legislature intended that an injured person's needs be furnished ('care') until 'recovery' has been accomplished through 'rehabilitation.'" *Id.* at 547 (MARILYN KELLY, J., dissenting). The majority's overly narrow definition of "care," however, "turns 'care' into a mere redundancy." *Id.*

3

The simplicity of applying the *Griffith* dissent's interpretation of the plain language of MCL 500.3105 and MCL 500.3107(1)(a) is consistent with the long-held principle that the Legislature intended that the no-fault act be construed liberally "in favor of the persons intended to benefit from it." *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 28; 528 NW2d 681 (1995). Likewise, the *Griffith* dissent's approach addresses this Court's oft-repeated concern regarding cost containment, because the dissent's approach would eliminate much of the costly litigation spawned by the *Griffith* majority's erroneous analysis, which will only be perpetuated by the majority opinion's modifications to the *Griffith* majority's analysis in this case.[4] Accordingly, I would affirm the judgment of the Court of Appeals because plaintiff is entitled to PIP benefits under MCL 500.3107(1)(a).

## II. THE MAJORITY'S ERRONEOUS ANALYSIS

The straightforward application of the statutes' plain language under the *Griffith* dissent stands in stark contrast to the majority's effort to apply the *Griffith* majority's confusing analysis to this case because, in attempting to clarify *Griffith*, the majority takes an approach that is divorced from the statutory language. Specifically, I agree with the majority that "nothing in the statutory language of MCL 500.3107(1)(a) supports the notion that postinjury allowable expenses should be reduced by the margin of the injured person's preinjury expenses of the same character." *Ante* at 14. However, the majority is

---

[4] One need only examine this Court's recent docket to see that *Griffith* continues to engender confusion and, thus, litigation regarding allowable expenses. See, e.g., *Krohn*, 490 Mich 145, *Johnson*, 492 Mich 169, *Douglas*, 492 Mich 241, and *Wilcox v State Farm Mut Auto Ins Co*, 488 Mich 930, 930-932 (2010) (CAVANAGH, J., dissenting).

4

forced to inject a variety of terms and phrases not found in the statutory language in an effort to "clarify" *Griffith* in its purported attempt to avoid an incremental approach to allowable expenses. The result is an overly narrow construction of the statute that is inconsistent with the Legislature's intent regarding MCL 500.3107(1)(a).

For example, the majority states that an "ordinary, everyday expense" cannot qualify as an allowable expense under MCL 500.3107(1)(a). However, the phrase "ordinary, everyday expense" is amorphous and, more importantly, absent from the statutory language. Rather, the statute simply provides that allowable expenses are "*all reasonable charges* incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a) (emphasis added). In my view, "all reasonable charges" could encompass a so-called "ordinary, everyday expense" and thus satisfy MCL 500.3107(1)(a) if that expense is reasonable and reasonably necessary for the injured person's welfare and protection.

The majority also proclaims that "the new expense must be of a *wholly different essential character* than expenses borne by the person before the accident . . . ." *Ante* at 15 (emphasis added). Again, this undefined statement of what an insured must now show to be eligible for benefits finds no support in the statutes or caselaw. Moreover, the majority's explanation of expenses that satisfy MCL 500.3107(1)(a) will not add clarity to this area of the law because the majority's examples are not truly "of a wholly different essential character." For instance, the majority states that a "custom shoe" would qualify as an allowable expense. However, no matter how much a shoe is customized or modified, it retains its "essential character" as a shoe, i.e., it protects a person's foot while

5

walking. I question how the bench and bar are to apply the majority's opinion consistently and fairly when the majority itself struggles to do so.

Next, the majority attempts to draw a distinction between a "combined" product, which it deems insufficient to satisfy MCL 500.3107(1)(a), and an "integrated" product, which, according to the majority, does satisfy MCL 500.3107(1)(a).[5] Again, that distinction does not appear in the statutory language, and the majority is unable to cite any support for its judicially created distinction. Moreover, the majority's explanation of the difference between a "combined" product and an "integrated" product evidences that the majority's approach is entirely standardless.

Specifically, the majority defines a "combined" product as one that "can be separated easily, both conceptually and physically, so that the fact-finder can identify which costs are of a new character and are thus *for* the injured person's care, recovery, or rehabilitation and which costs are ordinary, everyday expenses that are unchanged after the accident." *Ante* at 16. Given the unique nature of modified products, however, this explanation provides little assistance to the bench and bar. Indeed, the majority concludes that "[w]hen a medical products company produces a custom shoe, the shoe is an integrated product because the medical nature of the shoe . . . cannot be separated from the ordinary need for shoes by an uninjured person." *Ante* at 17-18. Presumably, the majority considers a "custom shoe" integrated because it cannot be separated

---

[5] The majority also states that a product must be "truly integrated" to satisfy its interpretation of MCL 500.3107(1)(a), but the majority does not explain, and it is unclear to me, whether there is a difference between "combined," "integrated," and "truly integrated" products.

"conceptually or physically." Yet, the majority reaches a different conclusion in this case despite the fact that, as explained later in this opinion, the same is true of plaintiff's modified, or "custom," van. In short, although the majority claims to reject the "incremental" approach used in *Ward v Titan Ins Co*, 287 Mich App 552; 791 NW2d 488 (2010), and *Hoover v Mich Mut Ins Co*, 281 Mich App 617; 761 NW2d 801 (2008), the majority implicitly adopts that very rule by defining the preinjury need too broadly while simultaneously defining an "integrated product" too narrowly. The majority's further deviation from the clear statutory language will only perpetuate the confusion that began with the *Griffith* majority's erroneous analysis.[6]

## III. APPLYING THE MAJORITY'S NEW RULE

Although I would apply the *Griffith* dissent, I believe that plaintiff is entitled to benefits even under the majority's faulty statutory interpretation. As the majority acknowledges, what might otherwise be considered an "ordinary, everyday expense" could constitute, under certain circumstances, an "integrated" product. Specifically, under the *Griffith* majority, food provided in an institutional setting is an "integrated" product, despite the fact that the exact same food is merely an "ordinary, everyday

---

[6] The majority claims to merely "highlight guideposts" so that Michigan's citizens may faithfully administer the statute's plain language. See *ante* at 18 n 47. However laudable that goal might be, I disagree with establishing "guideposts" that bear no connection to the "plain language" of the statute. The majority opinion represents the latest example of the majority's deviating from the actual language of MCL 500.3107. See, e.g., *Douglas*, 492 Mich at 279-287 (CAVANAGH, J., dissenting) (explaining that the majority erroneously injected language not found in, and inconsistent with, the statutory language of MCL 500.3107(1)(a)); and *Krohn*, 490 Mich at 186-187 (2011) (HATHAWAY, J., dissenting) (same).

expense" when provided in a noninstitutional setting. Likewise, although plaintiff's van is at its core "transportation," it is nevertheless an "integrated" product because plaintiff is required to use "*that particular*" form of transportation, given that plaintiff is ventilator dependent and wheelchair bound as a result of the motor vehicle accident. *Griffith*, 472 Mich at 537.

The majority apparently believes that plaintiff is not limited to a particular form of transportation, but that is simply not true, as even defendant conceded.[7] Thus, plaintiff's need for transportation cannot be easily separated from *a van* on conceptual grounds because no other type of vehicle can accommodate plaintiff's wheelchair. Stated differently, contrary to the majority's unsupported conclusion that "the character of plaintiff's ordinary transportation needs remains unchanged," *ante* at 22, because of his injuries the only personal vehicle that plaintiff can travel in is a van. Thus, plaintiff's postaccident transportation needs are significantly different from his preaccident transportation needs. In fact, it bears repeating that the van itself is *for* plaintiff's care because a van is the only type of vehicle that can accommodate plaintiff's postaccident condition. Before the accident, plaintiff did not require the modifications that the majority concedes are covered by MCL 500.3107(1)(a) because the modifications are *for* plaintiff's care. Likewise, before the accident, plaintiff did not require a van. After the accident, however, plaintiff cannot operate a personal vehicle unless it is modified *and it*

---

[7] See defendant's answer to plaintiff's request for admissions, dated September 24, 2008 (admitting that plaintiff "has required and currently *requires a modified van* that accommodates his wheelchair if [plaintiff] is to drive a motor vehicle with his currently [sic] disabilities") (emphasis added).

*is a van*. Thus, there is no meaningful difference between the modifications and the van itself for purposes of the majority's analysis. Plaintiff required neither before the accident, but, because of his motor-vehicle-related injuries, plaintiff now requires both *for* his care.[8]

The majority implicitly acknowledges that plaintiff's condition limits him to transportation in a van when it states that "[i]f plaintiff had already owned *a van*, defendant could have modified *that van*. If plaintiff wanted *a Mercedes van*, he could pay for the added luxury . . . ." *Ante* at 22 (emphasis added). Fear that an insurer could be automatically required to pay for the full cost of *any* van an insured selects is misplaced because, as the plain language of MCL 500.3107(1) establishes, the cost of the van must be "reasonable," and "the question whether expenses are reasonable . . . is generally one of fact for the jury . . . ." *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 55; 457 NW2d 637 (1990). Thus, if an insured selects "a Mercedes van," the insurer would

---

[8] The majority concludes that plaintiff's postaccident transportation needs are no different from his preaccident transportation needs, just as the *Griffith* majority concluded that the plaintiff's postaccident food needs were no different from his preaccident food needs. Perhaps the majority is correct that the *Griffith* plaintiff could, after recovering in the hospital, return to his home, open the refrigerator, and eat the exact same food that he had before his injury. However, could plaintiff in this case return home after recovering in the hospital and use the exact same mode of transportation he had before his injury? Clearly, the answer is no, because the character of plaintiff's transportation needs changed as a result of the accident, contrary to the majority's claim that a van is no different than the motorcycle plaintiff used for transportation before his accident. In fact, plaintiff could no longer ride a motorcycle or even operate a passenger car because plaintiff requires a van that is suitable for modification. Yet, by erroneously focusing on a person's general transportation needs before an accident and defining that need too broadly, the majority's interpretation will regrettably leave some injured parties without postaccident transportation, given the likely increased expense of purchasing a modifiable van, which many accident victims will not be able to afford.

9

be free to argue to the jury that the insured's choice is not reasonable under MCL 500.3107(1)(a). Likewise, an insurer would be free to argue that any type of personal van is not reasonable because wheelchair-accessible public transportation is reasonable under the specific circumstances. See *Wilcox*, 488 Mich at 932 (CAVANAGH, J., dissenting). However, as the majority admits, the parties in this case agreed that plaintiff should have a personal vehicle for transportation. Thus, because a van is the only mode of personal transportation available to plaintiff given the injuries he sustained in the motor vehicle accident, plaintiff's need for transportation cannot be easily separated from *a van* on conceptual grounds. Thus, the van itself is *for* plaintiff's care, and plaintiff is entitled to reimbursement for the full cost of the van even under the majority opinion because the modified van is an "integrated" product.

## IV. PLAINTIFF DID NOT WAIVE THE CONTRACT ISSUE

Finally, I disagree with the majority's conclusion that plaintiff waived the argument that defendant had contractually agreed to reimburse plaintiff for the base price of the van. As the Court of Appeals noted, the basis for the trial court's decision to deny defendant's motion for summary disposition and instead grant plaintiff summary disposition was not a model of clarity. However, in my view, the transcript of the hearing on the motion for summary disposition reveals that the trial court based its decision on its conclusion that the "Transportation Purchase Agreement" (TPA) required defendant to pay for the reasonable purchase price of a van.[9] Moreover, the Court of

---

[9] The parties executed the first TPA in 1988, shortly after plaintiff's 1987 motor vehicle accident. After hearing arguments, the trial court granted summary disposition in plaintiff's favor, explaining that defendant became "involved in this in '87 and it's gone

10

Appeals opinion clearly considered the issue and ultimately determined that the TPA is ambiguous. See *Admire v Auto-Owners Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued February 15, 2011 (Docket No. 289080), pp 2-3. Accordingly, both the trial court and Court of Appeals addressed the issue of whether the TPA contractually requires defendant to pay for the purchase price of the van. Thus, although I do not think that it is necessary to reach the issue because, in my view, plaintiff is entitled to the purchase price of the van under the no-fault act, even accepting the majority's contrary conclusion on the no-fault issue, I would remand to the trial court for further consideration of the contractual issue.

## V. CONCLUSION

I dissent from the majority's decision to expand the erroneous majority opinion in *Griffith*. Moreover, even under the majority's faulty statutory interpretation, I believe plaintiff is entitled to benefits because the van in this case is no different from the "integrated" products that the majority offers as examples of allowable expenses under MCL 500.3107(1)(a). Finally, because both lower courts considered the argument that defendant contractually agreed to reimburse plaintiff for the base price of the van, I

---

on for some time, what, 22 years, and I'm afraid [defendant is] going to have to remain involved." Thus, the trial court seemingly relied on the parties' contractual history dating back to 1988 regarding the cost of the van rather than no-fault principles in granting summary disposition in favor of plaintiff.

11

would not hold that the issue was waived. Accordingly, I dissent and would affirm the judgment of the Court of Appeals, or, at a minimum, remand to the trial court for further consideration of the contractual issue.

Michael F. Cavanagh

MCCORMACK and VIVIANO, JJ., took no part in the decision of this case.

12