*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. D. YARBROUGH, JR., Minor.

UNPUBLISHED
July 28, 2022

Nos. 358899; 358900[1]
Wayne Circuit Court
Family Division
LC No. 2010-495120-NA

Before: JANSEN, P.J., and O'BRIEN and HOOD, JJ.

PER CURIAM.

In Docket No. 358899, respondent mother appeals as of right the trial court's order terminating her parental rights to her son, DDY, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (*ii*) (failure to rectify other conditions), (g) (failure to provide care or custody despite financial means to do so), and (i) (parental rights to one or more siblings of the child terminated and attempts to rehabilitate parent unsuccessful). In Docket No. 358900, respondent father also appeals as of right the trial court's order terminating his parental rights to DDY pursuant to MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (i).[2] We affirm in both cases, but remand for the ministerial task of amending the termination order to reflect the proper statutory grounds relied on to terminate respondent father's parental rights.

## I. BACKGROUND

These consolidated appeals arise from an initial petition requesting that the trial court terminate respondent mother's parental rights to DDY and offer respondent father a treatment plan. The petition alleged that respondent mother's parental rights to four other children (unrelated to respondent father) were previously terminated for serious neglect, physical abuse, or both. It also

---

[1] This Court consolidated the appeals in Docket Nos. 358899 and 358900. *In re D D Yarbrough, Jr, Minor*, unpublished order of the Court of Appeals, entered October 19, 2021 (Docket Nos. 358899 and 358900).

[2] As will be discussed in more detail later, although the trial court's order found that MCL 712A.19b(3)(i) applied to both respondents, the referee's analysis at respondents' termination hearing stated that subsection (i) applied to respondent mother only.

alleged that she was convicted of three counts of second-degree child abuse related to one of those children, and was offered but failed to complete services meant to rectify the conditions leading to the previous terminations. The petition also alleged that respondent mother did not have adequate housing or a legal source of income to properly care for DDY. Regarding respondent father, the petition alleged that it was contrary to DDY's welfare to remain in respondent father's care because he had a recent criminal history and had recently absconded from probation.

After a bench trial, the trial court exercised jurisdiction over DDY and determined that statutory grounds for termination were satisfied as to respondent mother. The referee then conducted a hearing, at which respondent father appeared for the first time in this case. After this hearing, the trial court concluded that termination of respondent mother's parental rights was not in DDY's best interests at that time, and the court ordered both respondents to complete treatment plans to reunify the family. Respondent father's plan required him to complete a psychological evaluation, follow the recommendations of that evaluation, obtain suitable housing, participate in and benefit from parenting classes, and participate in, and benefit from, individual therapy. It also required him to maintain communication with petitioner, the Michigan Department of Health and Human Services (MDHHS). The plan also included regular, supervised visitation between respondent father and DDY. Respondent mother's plan was almost identical to respondent father's, but it also included a substance abuse evaluation and treatment. Respondent mother was also provided a parent partner.[3]

A series of dispositional review hearings took place before numerous referees in early 2021. Throughout these hearings, testimony revealed that respondents failed to make meaningful progress on their treatment plans. Both respondents had issues following up with their required services and communicating with MDHHS. Neither respondent regularly participated in their supervised visitations or was able to secure adequate housing for DDY during this time. And they both had issues maintaining consistent employment.

In May 2021, petitioner filed a supplemental petition, which requested that both respondents' parental rights to DDY be terminated under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), (i), and (j). This was based on respondents' failure to complete or benefit from their treatment plans over the prior two years, including their failure to sufficiently participate in visitation with DDY, and their continuing issues with housing and maintaining a legal source of income.

At respondents' termination hearing on the supplemental petition, the referee took judicial notice of the file and first noted the circumstances leading to respondents' initial disposition— specifically, respondent mother's child abuse convictions and prior terminations, respondent father absconding from parole, and both respondents' income and housing issues. The referee then concluded that "[m]any of those same circumstances still exist today." The referee cited both respondents' failure to secure adequate housing, regularly visit DDY, and complete their required services, as well as the inconsistencies in employment throughout the case. Accordingly, the

---

[3] Although respondent father's initial parenting plan did not include a parent partner, it later provided one. He was also ordered to undergo a substance abuse evaluation and treatment.

referee found statutory grounds for termination satisfied for both respondents under MCL 712A.19b(3)(c)(*i*) and (*ii*) and (g), and also under subsection (3)(i) for respondent mother only.

Proceeding to the best-interests issue, the referee concluded that termination of both respondents' parental rights was in DDY's best interests. In particular, the referee highlighted the extensive time respondents were given to comply with their treatment plans and determined that they could not provide the permanency DDY required. According to the referee, "[respondent mother's] testimony today gives me absolutely zero faith that she is going to be in a position to provide long-term care for this child." The referee further noted respondent mother's failure to consistently participate in services and visitation, along with her uncertainty of the year in which DDY was born.

Regarding respondent father, the referee noted that he never provided a plan for DDY and, despite the initial disposition occurring two years earlier, that he still lacked housing, was unemployed at the time of the hearing, and never completed any parenting classes. The referee reasoned, therefore, "that the permanency of [DDY] need[] [not] be halted any further" by continuing services. The referee explicitly considered DDY's placement with his paternal aunt, but was "not swayed by that factor" because respondents "put forth too little effort in order to rectify the conditions that brought [DDY] into care." After this proceeding, the trial court adopted the referee's recommendations[4] and entered an order (1) finding statutory grounds for termination of respondents' parental rights satisfied under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (i);[5] (2) concluding that termination of respondents' parental rights was in DDY's best interests; and (3) terminating respondents' parental rights to the child. These appeals followed.

## II. STANDARDS OF REVIEW

In order to terminate parental rights, a trial court must find that a statutory ground has been established by clear and convincing evidence. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). The trial court's findings and rulings regarding statutory grounds are reviewed for clear error. *Id*. "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *Id*. (quotation marks and citation omitted; omissions in original). Whether termination of parental rights is in the child's best interests must be established by a preponderance of evidence. *Id*. The trial court's findings and ruling that termination is in the child's best interests are also reviewed for clear error. *Id*. This Court must

---

[4] Additionally, following each of the dispositional review hearings before the referee, the trial court entered an order adopting the referee's findings and conclusions.

[5] As noted earlier, whereas the referee's findings applied MCL 712A.19b(3)(i) to respondent mother only, the trial court's order applied subsection (3)(i) to *both* respondents. Based on the record, only respondent mother had prior terminations. Nothing in the record indicates that respondent father had any prior terminations of his parental rights. Thus, it appears the trial court's reference to subsection (3)(i) as to respondent father was a clerical mistake and should be corrected on remand.

give due regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (quotation marks and citation omitted).

### III. DOCKET NO. 358899—RESPONDENT MOTHER

### A. STATUTORY GROUNDS FOR TERMINATION

Respondent mother argues generally, without addressing individual statutory grounds, that the trial court clearly erred in terminating her parental rights because MDHHS presented insufficient evidence supporting termination of her parental rights.[6] We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). The trial court terminated respondent mother's parental rights under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (i), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable

---

[6] While both respondents challenge, among other things, the trial court's findings on MCL 712A.19b(3)(j), the court did not actually find that subsection satisfied; rather, the trial court's order found that subsection (3)(i) was satisfied by clear and convincing evidence. Nevertheless, this discrepancy does not impact resolution of these appeals.

expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

Respondent mother does not provide specific argument to each challenged statutory ground. Instead, she generally highlights her alleged efforts at reunification and asserts none of the statutory grounds were satisfied. According to respondent mother, her circumstances changed abruptly after she was sexually assaulted, leading to noncompliance with her treatment plan. She further argues that her erratic testimony at the hearing on the supplemental petition, including her angry responses and inability to focus on the issues, exemplified the emotional stress and "shattered world" that followed her sexual assault. Respondent mother also claimed that investigators took her cellular telephone for two months to investigate this alleged assault, further justifying her absence from services. Respondent mother asserts that, when terminating her parental rights, the trial court erred by failing to account for the assault and her resulting mental state. Respondent mother also asserts that, because she successfully worked on her treatment plan and had "an excellent attitude" before she was assaulted, the court should have offered her additional time to complete services. In our view, however, this line of argument is more relevant to whether termination was ultimately in DDY's best interests, which we discuss later.

The trial court did not clearly err in finding that termination of respondent mother's parental rights under MCL 712A.19b(3)(i) was supported by clear and convincing evidence. Respondent mother's rights to her other four children were terminated after her convictions of child abuse, subsequent incarceration, and eventual failure to sufficiently participate in and benefit from reunification services. Specific to the first termination of her three eldest children, respondent mother failed to meaningfully participate in her ordered services even before her imprisonment for violating parole and still had not secured adequate housing by the time of termination. And although she testified to, and provided verification of, completing at least one parenting class while in prison, this did not occur until after the first termination and respondent mother's earlier noncompliance.

These circumstances are strikingly similar to respondent mother's efforts here. Despite over two years of additional opportunities to engage in services to rectify the issues that led to the prior terminations, respondent mother progressively disengaged over time. Her participation in visitation and services was erratic to begin with, and she eventually stopped participating in her required drug screens and refused to engage in further supervised visitation altogether. The record supports the conclusion that respondent mother never put forth the consistent effort needed to

-5-

rectify those conditions leading to her prior terminations. Accordingly, the trial court did not clearly err in terminating respondent mother's parental rights under MCL 712A.19b(3)(i).[7]

## B. BEST INTERESTS

Respondent mother also argues that the trial court clearly erred in terminating her parental rights because it was not in DDY's best interests to do so. We disagree.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (citation omitted). To determine whether termination of parental rights is in a child's best interests, the court should consider factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

Respondent mother argues that termination was unwarranted because she was strongly bonded to DDY and regularly visited him through video calls. She also notes DDY's placement with a relative, who, according to respondent mother, would have been willing to work with respondents as they continued their parenting plans, as further weighing against termination.

We disagree and conclude that termination of respondent mother's parental rights was in DDY's best interests. Although testimony from early in this case indicated the existence of a bond between respondent mother and DDY, the evidence supported a finding that the bond had deteriorated because of respondent mother's increasing lack of involvement. Respondent mother conceded not having seen DDY in person since May 2020, and she could not recall his birth year when testifying. Furthermore, respondent mother's reliance on video calls with DDY is unavailing given her outright refusal to engage in the in-person visits offered by MDHHS. Although respondent mother may have been justifiably frustrated with supervised visits, it cannot be said that DDY was best served by respondent mother ceasing all physical contact with her child for well over a year. Relatedly, respondent mother's testimony appears to show she was more concerned with *her* interest in raising DDY without interference, without sufficient regard for his wellbeing.

---

[7] Because only one statutory ground need be established to warrant termination, we need not address whether the trial court erred in its findings regarding MCL 712A.19b(3)(c)(*i*) or (*ii*), or (g). See *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015) ("[O]nly one statutory ground need be proved to support termination of a parent's parental rights."). We do note, however, that the trial court failed to address respondent mother's financial ability, as required under MCL 712A.19b(3)(g). This was clearly erroneous, but because only one statutory ground need be established, *Gonzales/Martinez*, 310 Mich App at 431, and we conclude that termination was proper under MCL 712A.19b(3)(i), any such error was harmless.

Nor are we persuaded that respondent mother's sexual assault warranted further opportunity for her to complete services. We do not seek to diminish the physical, mental, and emotional trauma following a sexual assault or the impact it may have on the ability to engage with a parenting plan. But even if the assault justified respondent mother's lack of participation for the two months when she claims that her phone was unavailable during an investigation, or contributed to the referee's perception of a confrontational attitude during the case, her overall history nevertheless supports that termination was in DDY's best interests. Respondent mother's lack of meaningful involvement in services was largely consistent from the start of this case, not only when her phone was allegedly unavailable. And that history, coupled with the similar facts from respondent mother's earlier terminations, shows that more time would not have made a difference. Moreover, under these circumstances, the referee did not err in concluding that DDY's current placement with the relative caregiver, while relevant, did not warrant delaying termination and continuing services. DDY's best interests, specifically his needs for permanency and stability, thus justified termination, and the trial court did not clearly err in so finding.

## IV. DOCKET NO. 358900—RESPONDENT FATHER

### A. STATUTORY GROUNDS FOR TERMINATION

Respondent father argues, also without addressing individual statutory grounds, that the trial court clearly erred in terminating his parental rights because he was partially compliant with his parenting plan and, thus, none of the statutory grounds were satisfied. We disagree.

The trial court did not clearly err in finding that clear and convincing evidence supported termination of respondent father's parental rights under MCL 712A.19b(3)(c)(*i*). The initial dispositional order was entered in September 2019, two years before the termination. Respondent father failed to meaningfully and consistently participate with his parenting plan. Respondent father was still unemployed and without adequate housing by the time of termination. He was also absent for extended periods during this case, during which time he had no contact with DDY or MDHHS. And despite his recent efforts to reengage in services—notably occurring almost two years after entry of his parenting plan—respondent father's participation remained inconsistent and he still had not completed any services by the time of termination. Testimony demonstrated that respondent father did not, for the most part, follow through with intake for parenting classes and other services, did not complete his required psychological or substance abuse assessments, and did not utilize the parent partner he was provided. Respondent father, therefore, failed to take the necessary steps to comply with his parenting plan and thus remedy the conditions that led to adjudication. Further, his extensive history of noncompliance belies any expectation that change might occur in the foreseeable future. These circumstances thus demonstrate that the trial court did not clearly err in finding clear and convincing evidence supporting termination under MCL 712A.19b(3)(c)(*i*).[8]

---

[8] As with respondent mother, we need not address the trial court's findings regarding the other challenged statutory grounds. See *Gonzales/Martinez*, 310 Mich App at 431. We do, however,

## B. BEST INTERESTS

Respondent father also argues that the trial court clearly erred in terminating his parental rights because it was not in DDY's best interests to do so. We disagree.[9]

The trial court's conclusion that termination of respondent father's parental rights was in DDY's best interests was not clearly erroneous. Respondent father had two years to comply with and benefit from his parenting plan. Yet, as of the termination hearing, he had not completed any services, nor consistently visited DDY. Although he made some recent efforts to reengage with MDHHS and work on his plan, respondent father continued to display issues with following through on his rereferrals. His belated efforts are in sharp contrast to his lack of effort to complete any services or visit with DDY, as well as his complete absence and failure to maintain contact with MDHHS for various periods throughout most of this case. Nor is there any evidence of a bond between respondent father and DDY, apart from his testimony that he had been visiting DDY recently at the paternal aunt's home. Even this fact was controverted by testimony of the MDHHS case worker, who testified that during home visits, the aunt reported that respondent father had had no contact beyond an occasional phone call. Accordingly, the trial court did not clearly err in finding that termination of respondent father's parental rights was in DDY's best interest.

## V. CONCLUSION

Affirmed, but remanded for the ministerial task of amending the termination order to reflect the proper statutory grounds relied on in terminating respondent father's parental rights.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Noah P. Hood

---

note that the trial court also failed to articulate any findings regarding respondent father's financial ability as required by MCL 712A.19b(3)(g).

[9] We note that respondent father's argument on this issue, apart from the heading and a general statement of applicable law, is just a single sentence asserting that "there is evidence on the whole record that termination [was] clearly not in the child[]'s best interest." He also fails to provide any record citations, and does not describe the specific evidence that weighs against termination. We, therefore, consider the issue abandoned. See *Begin v Mich Bell Tel Co*, 284 Mich App 581, 590; 773 NW2d 271 (2009), overruled in part on other grounds by *Admire v Auto-Owners Ins Co*, 494 Mich 10; 831 NW2d 849 (2013) ("A party may not leave it to this Court to search for the factual basis to sustain or reject its position, but must support its position with specific references to the record."). Nevertheless, for the sake of completeness, we address the issue.